1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | MICHAEL WIEGELE, on behalf of himself
and all others similarly situated,

CASE NO. 06cv1330

12 | Plaintiff,

**ORDER: GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

13 | vs.

14 | FEDEX GROUND PACKAGE SYSTEM,
INC., a Delaware Corporation; and Does 1
15 | through 500, Inclusive,

16 | Defendant.

17

18      Presently before the Court are Plaintiffs' motion for class certification [Doc. No. 51];

19 Defendants' opposition [Doc. No. 67]; Plaintiffs' reply [Doc. No. 96]; Defendants' surreply [Doc. No.

20 97]; and Plaintiffs' response to Defendants' surreply [Doc. No. 108.]  For the following reasons, this

21 Court **GRANTS** Plaintiffs' motion for class certification.

22

23                              **BACKGROUND**

24      Defendant FedEx ("FedEx") operates a ground package delivery system throughout the United

25 States.  [Pls.' Motion at 1-2.]  Plaintiffs, former FedEx managers, allege that Defendants improperly

26 classified them as exempt from overtime pay because they spent the majority of their time conducting

27 non-managerial (non-exempt) tasks, including package handling.  [Id.] Plaintiffs also argue that since

28 they were in fact non-exempt employees, they were improperly denied meal and rest breaks during

their tenure.  [Id.]

FedEx's operations involve unloading inbound packages, sorting, moving to outbound docks and ports, and loading onto vans and trailers for delivery.  [Id. at 2-3.]  There are two divisions at FedEx: the Ground Division, consisting of Satellite and Hub facilities, and the Home Delivery division, which are either stand-alone facilities, or are co-located with Ground Division Satellites.  [Id.]

At both Ground Satellite and Ground Hub facilities there are Senior Managers who are in charge of the entire operation.  [Id.]  There are also Sort Managers that serve as assistant managers for the Senior Manager.  [Id.]  Next, there are Dock Service Managers, that serve essentially as assistants to the Sort Mangers, and work directly with hourly-paid Package Handler employees.  [Id.]  At the Home Delivery facilities, there are no Sort Managers, but there are Dock Service Managers that report directly to the Senior Managers.  [Id.]

As of March 2005, FedEx handled 2.66 million packages per day and had grown 16% year over year.  [Id.]  Given this large volume, Defendants have created standardized policies, procedures, standards, manuals, task lists, work flow processes and engineering for many of the elements of their operation.  [Id. at 3-7.]  For example, Defendants have created training manuals on handling packages, loading vans, increasing production and handling time cards.  [Id.]  Defendants have conducted studies on their operations that have concluded "Too much of our management's time is spent loading" and "Focus is to free up Managers from loading."  [Id.]  Defendants have also uniformly classified management positions, including Sort Managers and Dock Service Managers, as exempt from overtime compensation.

Plaintiffs allege that due to corporate's productivity goals, understaffing, tight hourly budgets allocated towards package handlers, high turnover of hourly employees, absenteeism, and equipment failures, their primary duty was package handling–a non-exempt activity.  [Id.]  Plaintiffs also allege that they were forced to miss meal and rest breaks in violation of California law.  [Id.]  Therefore, in seeking damages and injunctive relief, they now move to certify five classes: (1) Sort Managers classified as salaried exempt employees; (2) Dock Service Managers classified as salaried exempt employees; (3) Sort Managers and Dock Service Managers that were not provided a 30-minute

uninterrupted meal period; (4) Sort Managers and Dock Service Managers that were not provided two 10-minute rest breaks; and (5) Sort Managers and Dock Service Managers that have not received their overdue overtime compensation in violation of California Labor Code Section 203.  [Id. at 2.]

## APPLICABLE CALIFORNIA LABOR LAWS

**A.    Overtime**

The California Labor Code provides that employees are presumptively entitled to be paid overtime for all hours worked in excess of eight hours during a day or forty hours a week, and are entitled to recover unpaid amounts at a rate of at least 1.5 times the employee's regular rate of pay. Cal. Lab. Code § 510(a).

**B     Meal & Rest Periods**

Under California law, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee."  Cal. Code Regs. tit. 8, § 11070(11)(A).  With respect to rest periods, employers are required to provide rest periods for a period of ten minutes for every four hours worked.  Id. § 11070(12)(A).

**C.    Waiting Time Penalties**

Section 203 of the California Labor Code provides in pertinent part: "If an employer willfully fails to pay . . . in accordance with Sections 201, 201.5, 202, and 202.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Labor Code § 203.

**D.      Exemption Classification**

An employee qualifies for an "executive exemption" from California's overtime and meal and rest period laws if: (1) his duties and responsibilities involve the management of the enterprise in which he or she is employed; (2) he customarily and regularly directs the work of two or more employees; (3) he has the authority to hire or fire other employees; (4) he customarily and regularly exercises discretion and independent judgment; (5) he is primarily engaged in duties that meet the test for exemption; and (6) he earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment. Id. § 11070(1)(A)(1). An employee classified as "exempt" based on all these elements is not covered by California's overtime and meal and rest period laws. If a classification is challenged, the employer must demonstrate that its "exempt" classification is proper. Ramirez v. Yosemite Water Co., 20 Cal.4th 785, 794-95 (1999).

**LEGAL STANDARD**

Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil Procedure. Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). A proposed class must also satisfy one of the subdivisions of Rule 23(b).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v Carlisle & Jacquelin, 417 US 156, 178 (1974) (quoting Miller v Mackey Int'l., 452 F 2d 424 (5th Cir. 1971)) (internal quotation marks omitted). As the party seeking to certify a class, plaintiffs bear the burden of demonstrating that they satisfy the elements of Rule 23. Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977); W. States Wholesale, Inc. v. Synthetic Indus., Inc., 206 F.R.D. 271, 274 (C.D. Cal. 2002). The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." Hanon v Dataproducts Corp, 976 F 497, 509 (9th Cir 1992).

However, a weighing of competing evidence is inappropriate at this stage of the litigation.  Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 605 (C.D. Cal. 2005); Chun-Hoon v. McKee Foods Corp., 2006 U.S. Dist. LEXIS 82029, *14-16 (N.D. Cal. 2006).  Finally, on a motion for class certification, the court "is bound to take the substantive allegations of the complaint as true."  Blackie v Barrack, 524 F2d 891, 901 n.17 (9th Cir 1975).

## ANALYSIS

**A.      Class Certification is Appropriate Under Rule 23(a)**

**1.      Numerosity: The Class is Sufficiently Numerous that Joinder is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  Defendants do not rebut Plaintiffs' estimate that the proposed class consists of 83 Sort Managers and 485 Dock Service Managers.  This number is sufficient to make joinder impracticable.  Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 482 (2d Cir. 1995) (stating that numerosity is "presumed at a level of 40 members"); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, [however,] classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."); Herbert Newberg, 1 Newberg on Class Actions, § 3.05 at 3-25 (3d ed. 1995) ("[C]ertainly, when the class is very large–for example, numbering in the hundreds–joinder will be impracticable").

**2.      Commonality: Common Questions of Law and Fact are Shared Among the Class**

Rule 23(a) also requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The necessary showing to satisfy commonality is "minimal."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998); Whiteway v. FedEx Kinko's Office & Print Servs., 2006 U.S. Dist. LEXIS 69193, *13 (N.D. Cal. 2006).  Commonality "is not defeated by slight differences in class members' positions."  Blackie, 524 F.2d at 902.  Individual variation among plaintiffs does not defeat underlying legal commonality because the "existence of shared legal issues with divergent

factual predicates is sufficient" to satisfy Rule 23.  Hanlon, 150 F.3d at 1019.

Here, questions of law and fact common to all class members include: (1) whether Defendants' policies mischaracterized managers as exempt employees under California law; (2) whether Defendants' policies and practices unlawfully deprived managers of overtime compensation; (3) whether Defendants employed policies and practices to avoid providing meal and rest periods (or compensation thereof) for employees; and (4) whether Defendants' policies and practices constituted a violation of California Business & Professions Code § 17200.  [Pls.' Motion at 12.]

Even though there are some variations among the putative class members' daily tasks, duties, and responsibilities, as Defendants allege, the similarities are sufficient enough to create common questions. Whiteway, 2006 U.S. Dist. LEXIS 69193, at *12-17 (acknowledging variations but finding commonality on similar grounds); Alba v. Papa John's USA, Inc., 2007 U.S. Dist. LEXIS 28079, *19-20 (C.D. Cal. 2007) (same); Krzesniak v. Cendant Corp., 2007 U.S. Dist. LEXIS 47518, *21 (N.D. Cal. 2007) (same); Wang, 231 F.R.D. 602, at 605, 613 (same).

In arguing, against commonality, Defendants' particularly rely on a state trial court opinion, Dunbar v. Albertson's Inc., Alameda County Superior Court Case No. RG04-146326 (2005) and Ramirez v. Yosemite Water Co, Inc., 20 Cal. 4th 785 (1999), which ruled that the necessity of individualized determinations weighs heavily against certification. [Defs.' Opp. At 14-18] However, in Dunbar v Albertson's, Inc., 141 Cal. App. 4th 1422, 1432 (2006), the appellate court approved the trial court decision with reluctance, noting that "case law since the trial court issued its ruling, particularly Sav-On Drug Stores, Inc. v. Superior Court, *supra*, 34 Cal. 4th 319, have called into question the key premises of the trial court's legal analysis."

Further, the California Supreme Court in Sav-On stated that "Ramirez was not a class action and, to the extent, is not apposite.  In Ramirez, [the court] did not even discuss certification standards, let alone change them."  Sav-On Drug Stores, Inc v Superior Court, 34 Cal.4th 319, 336 (2004).  The Sav-On court further noted that "Ramirez is no authority for constraining trial courts' great discretion in granting or denying certification," and concluded, "[i]n sum, defendant's reliance on Ramirez [to defeat class certification] is misplaced."  Id. at 336-38.  See also Chun-Hoon, 2006 U.S. Dist. LEXIS 82029, at *14-16 (distinguishing Dunbar and Ramirez and finding plaintiffs satisfied the commonality

1     requirement); <u>Wang</u>, 231 F.R.D. at 602 (distinguishing <u>Ramirez</u> on similar grounds).

2          Thus, the Court finds Plaintiffs have satisfied the commonality requirement.[1]

3

4         **3.**       **Typicality: The Claims of the Proposed Class Representative Are Typical of the Claims of the Other Members**

5

6          Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of

7 the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The commonality and typicality

8 requirements . . . tend to merge" because both focus on the similarities in claims across the class. <u>Gen.

9 Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 158 n.13 (1982). The test for typicality is: (1) whether

10 other members have the same or similar injury as the representative; (2) whether the action is based

11 on conduct not unique to the representative; and (3) whether other class members have been injured

12 by the same course of conduct. <u>Hanon</u>, 976 F.2d at 508 ("We agree that a named plaintiff's motion

13 for class cert should not be granted if there is a danger that absent class members will suffer if their

14 representative is preoccupied with defenses unique to it.") (internal quotations and citations omitted).

15          Claims are deemed typical if "they are reasonably co-extensive with those of absent class

16 members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020; <u>see also</u> <u>California

17 Rural Legal Assistance v. Legal Services Corp.</u>, 917 F.2d 1171, 1175 (9th Cir. 1990) (class

18 representatives and members of the class need only "share a common issue of law or fact."); <u>Arnold

19 v. United States Theatre Circuit, Inc.</u>, 158 F.R.D. 439, 440 (N.D. Cal. 1994) ("[C]laims of the named

20 plaintiffs need not be identical to the claims of the class; they need only arise from the same remedial

21 and legal theories."). Further, Rule 23 does not require a class representative for each job category

22 that may be included in the class. <u>Staton</u>, 327 F.3d at 957; <u>Dukes v. Wal-Mart</u>, 509 F.3d 1168, 1184-

23 85 (9th Cir. 2007); <u>Alba</u>, 2007 U.S. Dist. LEXIS 28079, at *24-25; <u>Taylor v. Union Carbide Corp.</u>,

24 93 F.R.D. 1, 6 (S.D. W.Va. 1980).

25          Plaintiff Michael Weigele alleges a similar injury, similar violations, and possesses the same

26 interests as the putative class members. Mr. Weigele was a Satellite Sort Manager and a Satellite

27

28        [1] The commonality requirement overlaps with the predominance requirement. Therefore, the existence of "common issues" will be discussed in greater detail under the predominance analysis in section (D)(1) of this order.

1  Dock Service Manager during the class period.  [Weigele Decl.]  He worked pursuant to similar

2  policies and procedures as the other class members and was classified exempt from overtime pursuant

3  to his job title.  [Id.]  He states that he worked overtime without pay, was not provided 30-minute

4  uninterrupted meal periods, was not permitted to take 10-minute rest breaks, and was not paid all

5  wages due pursuant to California Labor Code § 203 upon his separation from the company.  [Id.]

6  Therefore, even though his specific duties might have somewhat differed from a manager at an HD

7  terminal or a Hub, his claims arise from the "same remedial and legal theories" and share multiple

8  issues of law and fact.  Thus, the typicality requirement is met.[2]

9

10  **4.    Adequacy: The Proposed Class Representatives Can Fairly and Adequately Protect the Interests of the Class**

11

12  Rule 23(a)(4) provides that class representatives must "fairly and adequately protect the

13  interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met if the class

14  representatives meet two conditions: (1) the named representatives must appear able to prosecute the

15  action vigorously through qualified counsel, and (2) the representatives must not have antagonistic

16  or conflicting interests with the unnamed members of the class.  Lerwill v. Inflight Motion Pictures,

17  Inc., 582 F.2d 507, 512 (9th Cir. 1978).

18  Here, Plaintiffs' attorneys are experienced class action litigators and a substantial part of their

19  practice is dedicated to the prosecution of class actions such as this.  [Pls.' Motion at 14.]  Second, the

20  Court finds no evidence of antagonism between the proposed class representative, or his attorneys,

21  and the putative class members.  Class members who wish to "opt-out" will be afforded the

22  opportunity to do so.  Therefore, the adequacy requirement is satisfied.

23  **B.    Class Certification is Not Appropriate Under Rule 23(b)(1)**

24  Under Rule 23(b)(1), a class may be certified if either subsection (A) or (B) is satisfied.

25  Subsection (A) permits certification if "the prosecution of separate actions by . . . individual members

26  of the class would create a risk of inconsistent or varying adjudications with respect to individual

27

28  [2]  Defendants' arguments refuting typicality overlap with their arguments refuting predominance.  Therefore, these arguments will also be addressed in the predominance analysis of this order.

1   members of the class which would establish incompatible standards of conduct for the party opposing

2   the class." Fed. R. Civ. P. 23(b)(1)(A).

3          The Ninth Circuit has held that certification under Rule 23(b)(1)(A) is not appropriate in an

4   action for damages.  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180 (9th Cir. 2001).  As

5   discussed below, although Plaintiffs also seek injunctive relief, this case is best characterized as

6   primarily a suit for money damages.  Thus, the Court declines to certify the class pursuant to

7   23(b)(1)(A).

8          To bring a Rule 23(b)(1)(B) class action, the representative plaintiffs must demonstrate "that

9   the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely

10  at their maximums, demonstrate the inadequacy of the fund to pay all the claims." Ortiz v. Fibreboard

11  Corp., 527 U.S. 815, 838 (1999); see also, e.g., Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614

12  (1997) (noting that Rule 23(b)(1)(B) "includes . . . 'limited fund' cases, [i.e.,] instances in which

13  numerous persons make claims against a fund insufficient to satisfy all claims").  In Ortiz, the

14  Supreme Court held that in order to satisfy Rule 23(b)(1)(B), a plaintiff must demonstrate that the case

15  involves a " 'fund' with a definitively ascertained limit, all of which would be distributed to satisfy

16  all those with liquidated claims based on a common theory of liability, by an equitable, pro rata

17  distribution." Ortiz, 527 U.S. at 841.  Plaintiffs have not shown that such a limited fund exists, and

18  the evidence before the court in no way suggests that Defendants' ability to pay members of the

19  putative class is limited.

20         This Court is not aware of any courts certifying similar wage and hour cases under Rule

21  23(b)(1)(A) or (B) and Plaintiffs have not mentioned any in their moving papers.  The Court is aware,

22  however, of several courts that have found certification of such disputes inappropriate under Rule

23  23(b)(1).  See Whiteway, 2006 U.S. Dist. LEXIS 69193, at *23-24; Jimenez v. Domino's Pizza, Inc.,

24  238 F.R.D. 241, 250 (C.D. Cal. 2006); Sepulveda v. Wal-Mart Stores, Inc., 237 F.R.D. 229, 245 (C.D.

25  Cal. 2006); Maddock v. KB Homes, Inc., 2007 U.S. Dist. LEXIS 58743, *16-17 (C.D. Cal. 2007);

26  Heffelfinger v. Elec. Data Sys. Corp., 2008 U.S. Dist. LEXIS 5296, *65-72 (C.D. Cal. 2008).

27         Therefore, the Court rejects Plaintiffs' argument that the class should be certified under rule

28  23(b)(1).

**C.      Class Certification is Not Appropriate under Rule 23(b)(2)**

Rule 23(b)(2) allows a class action to be certified where Rule 23(a) is met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class," making it appropriate to grant relief sought to the class as a whole. Fed. R. Civ. P. 23(b)(2). This subsection primarily applies to suits for injunctive relief, but the Court can certify a class seeking money damages if "the claim for monetary damages [is] secondary to the primary claim for injunctive or declaratory relief." Molski v. Gleich, 318 F.3d 937, 947 (9th Cir. 2003); Zinser, 253 F.3d at 1195 (stating monetary relief must be "incidental to the primary claim for injunctive relief").

When former employees seek prospective injunctive relief, courts often decline to certify the class under Rule 23(b)(2), finding that the plaintiffs' primary interest is monetary relief. For example, in Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 250 (C.D. Cal. 2006), the court stated: "Plaintiffs are former employees and thus an injunction as to the [the employer's] behavior to current employees cannot be Plaintiffs' primary concern. Rather a damages award is their main interest."). See also Maddock, 2007 U.S. Dist. LEXIS 58743, at *17-18; (finding certification under Rule 23(b)(2) was inappropriate in part because more than half of the putative class members were former employees); Kurihara v. Best Buy Co., Inc., 2007 U.S. Dist. LEXIS 64224, *22 (N.D. Cal. 2007) ("In the employment context, courts routinely deny class certification under Rule 23(b)(2) where the named plaintiff is a former employee and therefore will not benefit from the requested injunctive relief" (collecting cases); Richardson v. Restaurant Mktg. Assoc., 83 F.R.D. 268, 271 (N.D. Cal. 1978) (finding former employees could not seek injunctive relief on behalf of current employees).

In the present action, Mr. Wiegele and each of Plaintiffs' declarants are former employees that cannot benefit from prospective injunctive relief. Therefore, the Court finds certification under Rule 23(b)(2) is inappropriate.

**D.      Class Certification is Appropriate under Rule 23(b)(3)**

To certify a class under Rule 23(b)(3), plaintiffs must demonstrate that: "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, both criteria are met: (1) common

1    questions predominate and (2) a class action is superior to other methods to adjudicate the claims.

2

3        **1.        The Predominance Requirement is Satisfied**

4        In short, Defendants argue Plaintiffs fail to satisfy the predominance requirement because: (1)

5    Plaintiffs' evidence fails to demonstrate the predominance of common issues, and (2) that individual

6    issues predominate due to the significant differences among the class members' job duties and actual

7    work activities.  For the following reasons, this Court disagrees.

8        "Because no precise test can determine whether common issues predominate, the Court must

9    pragmatically assess the entire action and the issues involved."  Romero v. Producers Dairy Foods,

10   Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006).  Under analogous facts, many courts in this circuit have

11   found that similar common questions of law and fact have predominated and have certified cases

12   under Rule 23(b)(3).  For example, in Wang v. Chinese Daily News, the court stated:

13           [C]ommon questions of law and fact predominate in this case.  These
             questions include: whether Defendant has a uniform policy of unlawfully
14           treating certain classifications of employees as "exempt;" whether Defendant
             conducted an appropriate investigation to support a good faith defense of this
15           policy; whether Defendant failed to pay overtime compensation to
             non-exempt employees; whether Defendant deprived employees of meal and
16           rest breaks and failed to pay appropriate penalties for missed breaks; whether
             Defendant failed to keep accurate records of hours worked; whether
17           Defendant failed to provide accurate itemized wage statements to employees;
             whether Defendant failed to pay all wages due to employees at the time that
18           their employment was terminated.  Additional questions of fact include:
             whether class members receive their pay through a common compensation
19           program or payroll system; whether Defendant performed studies to
             determine the amount of hours its employees actually spent on exempt versus
20           non-exempt work; and whether Defendant has centralized oversight and
             supervision of its employees.  A common inquiry is the most efficient and
21           appropriate way to answer these questions.  Most differences among putative
             class members, such as the amount of overtime premium pay owed or the
22           number of breaks that have been missed, affect damages, not Defendant's
             liability. The Ninth Circuit has found that "the amount of damages is
23           invariably an individual question and does not defeat class action treatment."
             Blackie, 524 F. 2d at 905.

24

25   Wang, 231 F.R.D. at 613-14.

26       In a related case Krzesniak v. Cendant Corp., the court stated:

27           Plaintiff contends that common questions will predominate in this case
             because (1) Budget [Rent-A-Car] operates its facilities using standardized
28           practices and procedures set forth in common written manuals that delineate
             the work SMs [shift managers] perform, (2) SMs perform the same range of
             duties at Budget's California locations, (3) SMs receive uniform training and

06cv1330

do not need to be retrained on managerial duties if they transferred to another location, and (4) Budget uniformly classifies its managers as exempt without regard to actual duties performed. Thus, Plaintiff argues that the compendium of actual manager job duties, the classification of those duties as exempt or nonexempt, and Budget's realistic expectations of the managers are the key factual issues in the case and are all susceptible to common proof. The Court agrees with Plaintiff that these questions predominate.

Krzesniak, 2007 U.S. Dist. LEXIS 47518, at *37-38. See also Whiteway, 2006 U.S. Dist. LEXIS 69193, at *12-15, 27-31 (finding predominance requirement satisfied when plaintiffs challenged FedEx Kinko's company-wide policy of categorizing all managers as exempt and raised similar common questions of law and fact); Tierno v. Rite Aid Corp., 2006 U.S. Dist. LEXIS 71794, at *31 (finding predominance requirement satisfied when plaintiffs raised similar common questions of law and fact); Sav-On, 34 Cal. 4th at 335 (same).

In the present action, Plaintiffs have raised many of the same common questions that were raised in the foregoing cases, and have similarly shown, through substantial evidence, that common questions predominate. The evidence consists of Defendants' own policies and procedures, training materials and best practice guides, declarations and deposition testimony of putative class members from both Plaintiffs and Defendants, as well as deposition testimony of Defendants' own "Persons Most Knowledgeable" and key corporate personnel.[3] Taken together, this evidence suggests: (1) Defendants treat Managers as a class by uniformly classifying them as exempt, regardless of whether they work in a Hub, Satellite, or Home Delivery facility, or on an outbound or inbound sort; (2) Defendants' duties and responsibilities are similar regardless of location and assignment; (3) Defendants have engaged in studies to insure that the standards and processes are in place and are followed; (4) Defendants' uniform policies can result in minimal managerial discretion; (5) Defendants have no written or oral policy regarding meal or rest breaks and the managers miss these breaks; (6) the managers perform a finite list of tasks;[4] (7) because of high turn over and absenteeism managers are required to perform manual package handling responsibilities; and (8) Defendants have

---

[3] See Pls.' Motion at 3-9; Pls.' Reply at 2, 6-8, 11-12.

[4] In Sav-On, the California Supreme Court stated that: in cases where "the duties and responsibilities of the putative class members are similar in critical respects from region to region, area to area, and store to store," and a "reasonably definite and finite list" of tasks can be ascertained, then the issue of whether these tasks should be classified as exempt or non exempt "can easily be resolved on a class-wide basis." Sav-On, 34 Cal.4th at 331. This is true here. [See Pls.' Reply at 7.]

1  not paid any overtime wages to Plaintiffs based upon the uniform classification of the employees as

2  exempt. The Court has carefully reviewed Defendants' evidence to the contrary. However, the Court

3  recognizes that at this early stage of the litigation, it must "only determine if the plaintiffs have

4  proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence."

5  [Defs.' Opp. at 2-13; Defs.' Surreply at 1-7]; Staton, 327 F.3d at 954; Wang, 231 F.R.D. at 605;

6  Chun-Hoon, 2006 U.S. Dist. LEXIS 82029, at *11-13. The Court finds Plaintiffs have met that

7  burden.

8          Defendants stress that individual questions predominate because the job duties and time spent

9  on various tasks widely vary depending on whether the managers are working in outbound or inbound

10  facilities or are in Satellites, Hubs, or Home Delivery. [Defs.' Opp. At 19-24.] They argue that these

11  differences create the need for individual determinations regarding the percentage of time that

12  individuals devoted to non-managerial duties during each work week. [Id. at 24.]

13          In Wang, the court responded to this precise argument:

14          The Court rejects Defendant's argument that the "overriding" issue in this
            case is whether reporters and account executives are exempt or non-exempt
15          from overtime requirements and that the Court must engage in an
            individualized inquiry into each reporter's and account executive's job
16          duties, hours, and/or income in order to determine whether or not that
            individual should be classified as "exempt" . . . Defendant cannot, on the one
17          hand, argue that all reporters and account executives are exempt from
            overtime wages and, on the other hand, argue that the Court must inquire into
18          the job duties of each reporter and account executive in order to determine
            whether that individual is "exempt." Moreover, Defendant's argument
19          ignores the fact that Plaintiffs are challenging Defendant's *policy* of
            classifying all reporters and account executives as "exempt."
20
    Wang, 231 F.R.D. at 613.
21
            In In Re Wells Fargo, 2007 U.S. Dist. LEXIS 77525, *17-19 (N.D. Cal. 2007), the court
22
    tracked the Wang analysis and stated: "In the context of overtime pay litigation, courts have often
23
    found that common issues predominate where an employer treats the putative class members
24
    uniformly with respect to compensation, even where the party opposing class certification presents
25
    evidence of individual variations." The court certified the class and concluded: "It is manifestly
26
    disingenuous for a company to treat a class of employees as a homogenous group for the purposes of
27
    internal policies and compensation, and then assert that the same group is too diverse for class
28
    treatment in overtime litigation." Id. at *32-33.

In another related case, <u>Tierno v. Rite-Aid</u>, the court followed <u>Wang</u> and granted class certification despite some variation in the amount of time managers spent on various tasks . <u>Tierno</u>, 2006 U.S. Dist. LEXIS 71795, at *6-10.  The court explained that predominant issues existed because the managers essentially performed the same tasks at each store, were training through a roughly uniform training program, and because the company maintained a policy of treating all managers as exempt.  <u>Id.</u>  The court noted that Rite-Aid had always categorized store managers as exempt without making individual assessments, and that "[g]iven this, Rite-Aid's contention that each store manager must now be individually assessed to determine whether the position can be categorized as exempt or non-exempt rings hollow."  <u>Id.</u>; <u>see also Heffelfinger</u>, 2008 U.S. Dist. LEXIS 5296, at *104-05 ("The court will not allow [Defendants] to treat information technology workers uniformly [as exempt], and simultaneously contend that individualized inquiries preclude certification."); <u>Krzesniak</u>, 2007 U.S. Dist. LEXIS 47518, at *46-48 (citing <u>Wang</u> and certifying a class of shift managers who challenged their exempt classification); <u>Kurihara</u>, 2007 U.S. Dist. LEXIS 64224, at *28-31 (following <u>Wang</u> analysis and granting class certification); <u>Whiteway</u>, 2006 U.S. Dist. LEXIS 69193, at *4 (granting class certification and finding that mangers shared similar job duties and responsibilities, even though there was some variation in job duties depending on the type and size of the managers' particular FedEx Kinko store); <u>Alba</u>, 2007 U.S. Dist. LEXIS 28079, at *39-41 (citing <u>Wang</u>, granting class certification, and stating "[T]he question of whether store managers are 'exempt' is a common defense for Defendants in this case, which supports class adjudication."); <u>Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163 (9th Cir. 2001) ("some variation among the individual employees as well as some proof–including as to damages–do not defeat predominance"); <u>Sav-On</u>, 34 Cal. 4th at 335 ("[N]either variation in the mix of actual work activities undertaken [by the assistant or operating managers] nor differences in the total unpaid overtime compensation owed each class member bar certification as a matter of law.").[5]

_____

[5] In addition to citing <u>Dunbar</u> and <u>Ramirez</u>, Defendants also rely on three related wage and hour cases where class certification was denied in part because the court found individual issues predominated. [Defs.' Opp. at 24, <u>citing Jimenez v. Domino's Pizza, Inc.</u>, 238 F.R.D. 241, 250 (C.D. Cal. 2006), <u>Sepulveda v. Wal-Mart Stores, Inc.</u>, 237 F.R.D. 229, 245 (C.D. Cal. 2006), and <u>Perry v. U.S. Bank</u>, 2001 U.S. Dist. LEXIS 25050, *20 (N.D. Cal. 2001).]  However, these cases appear to stand for a minority position in their analysis of the predominance requirement in misclassification cases.

1    Similarly, here, there are variations among the managers' duties, but as in <u>Wang</u>, Plaintiffs are

2    challenging Defendants' *policy* of classifying all managers as exempt.  Therefore, the Court finds that

3    common issues predominate.

4    Finally, the Court has various procedural tools available to it to resolve any individual issues.

5    For example, in <u>Sav-On</u>, the California Supreme Court recognized:

6    [T]hat each class member might be required ultimately to justify an individual claim
     does not necessarily preclude maintenance of a class action."  Predominance is a
     comparative concept, and "the necessity for class members to individually establish

7    <u>eligibility and damages</u> does not mean individual fact questions predominate."
     Individual issues do not render class certification inappropriate so long as such issues

8    may effectively be managed.

9
     <u>Sav-On</u>, 34 Cal. 4th at 334 (internal citations omitted) (emphasis added).

10
     In <u>Tierno</u>, the court echoed <u>Sav-On</u> and noted:

11
     [C]ourts in overtime cases such as this may properly couple uniform findings on

12   common issues regarding the proper classification of the position at issue with
     innovative procedural tools that can efficiently resolve individual questions regarding

13   <u>eligibility and damages</u>.  Such tools include administrative mini-proceedings, special
     master hearings, and specially fashioned formulas or surveys.  In short, the California

14   Supreme Court has rejected the notion that an employer is necessarily entitled, under
     California law generally or <u>Ramirez</u> in particular, to an individualized trial with respect

15   to each class member in an overtime case.  Rather, where, as here, there is sufficient
     similarity among Store Manager positions to render class treatment appropriate, any

16   remaining individual issues regarding <u>eligibility for relief or damages</u> can be addressed
     through other measures.

17
     If a class was not certified in this case, the alternative would be either numerous

18   individual suits or the abandonment of individual claims. The former would
     undoubtedly result in a great duplication of effort given the predominance of common

19   questions of law and fact, while the latter would result in lost access to the courts.

20   <u>Tierno</u>, 2006 U.S. Dist. LEXIS 71794, at *35-37 (emphasis added), <u>see also</u> <u>Whiteway</u>, 2006

21   U.S. Dist. LEXIS 69193, at *29-30 (stating same and citing <u>Tierno</u>); <u>Krzesniak</u>, 2007 U.S. Dist.

22   LEXIS 47518, *54-55 (stating same and citing <u>Tierno</u>); <u>Bell v. Farmers Ins. Exchange</u>, 115 Cal. App.

23   4th 715, 739-56 (2004) (affirming class certification and upholding the use of statistical sampling to

24   _____

25       Additionally, in these cases, the courts did not find standardized policies and procedures.
     <u>See</u> <u>Jimenez</u>, 238 F.R.D. at 251-53; <u>Perry</u>, 2001 U.S. Dist. LEXIS 25050, at *7; <u>Alba</u>, 2007 U.S. Dist.

26   LEXIS 28079, at *37-40 (distinguishing <u>Jimenez</u> on similar grounds and upholding class certification);
     <u>Krzesniak</u>, 2007 U.S. Dist. LEXIS 47518, at *44-46. (distinguishing <u>Perry</u> on similar grounds and

27   upholding class certification).  In <u>Sepulveda</u>, the court noted that cases warranting certification "may
     involve far more standardized work policies, more clearly non-exempt duties, and a smaller number

28   of variable factors."   <u>Sepulveda</u>, 237 F.R.D. at 249.  Here, as discussed, there is evidence of
     standardized work policies and there is no debate as to whether the duties (i.e. handling packages) are
     non-exempt duties.

1  calculate the damages owed to the class).  If necessary, this Court will entertain arguments for the use

2  of particular procedural tools at a later stage in this litigation.

3      Thus, the Court finds that Plaintiffs have satisfied the predominance requirement.[6]

4

5      **2.      The Superiority Requirement is Satisfied**

6      The Court finds that a class action is the superior method for fair and efficient adjudication of

7  this controversy.   If the class members–estimated in the hundreds–each pursued their claims

8  individually, they would "clog[] the federal courts with innumerable individual suits litigating the

9  same issues repeatedly." Dukes, 474 F.3d at 1244.  As the Sav-On court observed:

10         Absent class treatment, each individual plaintiff would present in separate,
           duplicative proceedings the same or essentially the same arguments and
11         evidence, including expert testimony.  The result would be a multiplicity of
           trials conducted at enormous expense to both the judicial system and the
12         litigants.   It would be neither efficient nor fair to anyone, including
           defendants, to force multiple trials to hear the same evidence and decide the
13         same issues.

14  Sav-On, 34 Cal.4th at 340 (internal quotations and citations omitted).

15

16      [6] Defendants also added that common issues do not predominate because the Court will be
    forced to make other individual determinations including: (1) "whether any of the asserted non-
17  managerial work was directly and closely related to exempt work," and (2) "whether and why the
    manager performed the non-managerial work in defiance of Defendants' training and instruction."
18  [Defs.' Opp. at 24.]  However, these issues are in fact susceptible to common proof.

19      For example, in some misclassification cases, there is a question as to whether a particular task
    is inherently an exempt activity.  In those cases, courts find that the presence of this question is one
20  factor weighing in favor of predominance because it is a legal question common to the class. Tierno,
    2006 U.S. Dist. LEXIS 71795, at *10 (granting certification under Rule 23(b)(3) and holding that
21  "significant aspects" of the case could be resolved on a class basis, including the "actual requirements
    of the job, the realistic expectations of the employers, *the proper classification of store manager tasks*
22  *as exempt or non-exempt*, and Rite-Aid's state of mind, knowledge, historical actions, and policies
    with respect to its classification and treatment of Store Managers.") (emphasis added); Sav-On, 34
23  Cal.4th at 331 (agreeing with the trial court that determining the exempt nature of tasks "is an issue
    that can easily be resolved on a class-wide basis by assigning each task to one side of the 'ledger' and
24  [concluding that] the manageability of the case [was] not the daunting task Defendant has sought to
    portray").  Therefore, determining whether some of the asserted non-managerial work is directly
25  related to exempt work will be more properly resolved on a class-wide basis.

26      Second, analyzing Defendants' training and instruction of their managers is another issue that
    is easily susceptible to common proof.  Last, as discussed, several courts confronted with similar
27  misclassification cases have explicitly recognized the presence of individual issues, but found they
    did not bar class certification.  Whiteway, 2006 U.S. Dist. LEXIS 69193, at *18-19 (finding
28  Defendants' allegation that plaintiff failed to follow company policy did not bar class certification);
    Wang, 231 F.R.D. at 613; Chun-Hoon, 2006 U.S. Dist. LEXIS 82029, at *14; Krzesniak, 2007 U.S.
    Dist. LEXIS 47518, at *40-41.

1   Here, it would be far more costly and time consuming for each individual putative class

2   member to seek and compel discovery of Defendants' policies and procedures, take multiple

3   depositions, retain experts, and litigate damages issues.  For these reasons, Courts often certify class

4   actions when employer wage and hour practices similarly impact a large number of workers.  Lerwill

5   v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978) (in certifying a class of technicians

6   seeking overtime pay and holding that "[n]umerous individual actions would be expensive and

7   time-consuming and would create the danger of conflicting decisions as to persons similarly

8   situated"); see also Krzesniak, 2007 U.S. Dist. LEXIS 47518, at *50 (finding overtime class action

9   superior to multiple individual lawsuits because the expenditure of additional time, effort and money

10  attendant to numerous individual suits is greatly reduced, potential for differing outcomes is avoided,

11  and individual managers may lack resources to pursue individual litigation against large corporate

12  entity); Tierno, 2006 U.S. Dist. LEXIS 71794, at *33-37 (alternative to certified managers' class

13  would be either numerous individual suits or the abandonment of individual claims, which would

14  result in great duplication of effort or lost access to the courts).  Therefore, the superiority requirement

15  is satisfied.[7]

16

17

18

19

20

21   [7] Two other factors support a finding of superiority and predominance.  First, California courts

22  have acknowledged that the "assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption."  Ramirez, 20 Cal.4th at 794–95; Sav-On, 34 Cal.4th at 338; Nordquist v. McGraw-Hill

23  Broadcasting Co., 32 Cal. App. 4th 555, 562 (1995).  In Sav-On, the California Supreme Court noted that requiring a plaintiff to show that all of the members of a putative class are not exempt would

24  impermissibly reverse the burden of proof.  Sav-On, 34 Cal.4th at 338 ("Were we to require as a prerequisite to certification that plaintiffs demonstrate defendant's classification policy was, as the

25  Court of Appeal put it, either 'right as to all members of the class or wrong as to all members of the class,' we effectively would reverse that burden.").

26

27   Second, the Sav-On court also stated that its decision to allow certification of exemption classes was "buttressed" by "sound public policy."  Id. at 340.  It noted that "California's overtime

28  laws [were] remedial and [were] to be construed so as to promote employee protection. . . . [A]s we have recognized, 'this state has a public policy which encourages the use of the class action device.' "  Id.  Although the Sav-On Court did not analyze the question of class certification under the Federal Rules of Civil Procedure, it sheds light on the underlying purpose of California's labor laws.

06cv1330

**CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiffs have satisfied the Rule 23(a)

requirements and **GRANTS** Plaintiffs' motion for class certification under Rule 23(b)(3).[8] [9]

IT IS SO ORDERED.


DATED:  February 12, 2008

_____
Honorable Janis L. Sammartino
United States District Judge

---

[8]  The Court has reviewed Defendants' numerous evidentiary objections.  However, the Court notes that "[u]nlike evidence presented at the summary judgment stage, evidence presented in support of class certification need not be admissible at trial."  Heffelfinger, 2008 U.S. Dist. LEXIS 5296, at *8-11.  Also, to the extent Defendants object on grounds suitable for review at this stage, these objections are either denied as moot because they did not affect this Court's ultimate determination or are overruled.

[9]  The Court recognizes that Rule 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court.  See Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001).  If later evidence disproves Plaintiffs' contentions, this Court could modify the class, decertify the class, or use a variety of management devices.  Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."); In re Visa Check/ Mastermoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001); I Newberg on Class Actions § 4.26 at 4-91 to 4-97.