LAW OFFICES OF KEVIN T. BARNES
Kevin T. Barnes, SBN 138477
Gregg Lander, SBN 194018
5670 Wilshire Boulevard, Suite 1460
Los Angeles, CA 90036
Telephone:      323.549.9100
Facsimile:      323.549.0101
Barnes@kbarnes.com
Lander@kbarnes.com

LAW OFFICE OF JOSEPH ANTONELLI
Joseph Antonelli, SBN 137039
Janelle Carney, SBN 201570
1000 Lakes Drive, Suite 450
West Covina, CA 91790
Telephone:      626.917.6228
Facsimile:      626.917.7686
JAntonelli@antonellilaw.com
JCarney@antonelli.law.com

COHELAN KHOURY & SINGER
Michael D. Singer, SBN 115301
J. Jason Hill, SBN 179630
605 C Street, Suite 200
San Diego, CA 92101
Telephone:      619.595.3001
Facsimile:      619.595.3000
MSinger@ckslaw.com
JHill@ckslaw.com

Attorneys for Plaintiffs MICHAEL WEIGELE,
TESSA BISHOP, JOSE VALLADARES, JESSIE C.
ALUMIT, DOMINIC ANGELO, ADINA-MARIE J
BENFORD, RANDAL BORTMAN, BRYON
BROOKS, OCIE R BROWN, JEFFREY
CABREROS, AKIL CHAVIES, BRIAN CHON,
FRANK CRANDALL, RICHARD DAVIS, PETER
FIERRO, NIESHA GIBBS, ARMOND GRAY,
NICSON HINMAN, YONNIE LANGHAM,
TERRY LOCATELLI, IBRAHIM MCFARLIN,
IMRAN RANA, RICK REDDING, ALEX RUIZ-
VALESCO, BERNARDO SAN RAMON, ABBIE J.
SHANKEL, EDDIE VILLEGAS, TIM WEECH and
KYLE WILLINGHAM

**THIRD AMENDED COMPLAINT**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WEIGELE, TESSA BISHOP, JOSE VALLADARES, JESSIE C. ALUMIT, ADINA-MARIE J BENFORD, RANDAL BORTMAN, BRYON BROOKS, OCIE R BROWN, AKIL CHAVIES, BRIAN CHON, FRANK CRANDALL, RICHARD DAVIS, PETER FIERRO, NIESHA GIBBS, ARMOND GRAY, NICSON HINMAN,YONNIE LANGHAM, TERRY LOCATELLI, IBRAHIM MCFARLIN, IMRAN RANA, RICK REDDING, ALEX RUIZ-VALESCO, BERNARDO SAN RAMON, ABBIE J. SHANKEL, EDDIE VILLEGAS, TIM WEECH and KYLE WILLINGHAM,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware Corporation; and DOES 1 through 500, Inclusive,<br><br>Defendants. | Case No.: 06 CV 1330 JLS (POR)<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES AND RESTITUTION**<br><br>**1) Failure to pay Overtime Wages (Lab. Code, § 1194)**<br><br>**2) Failure to Pay Wages of Terminated or Resigned Employees (Lab. Code, §§ 201-203)**<br><br>**3) Failure to Provide Meal Periods or Compensation in Lieu Thereof (Lab. Code, §§ 226.7, 512; IWC Orders; Cal. Code Regs., Title 8, § 11050)**<br><br>**4) Failure to Provide Rest Periods or Compensation in Lieu Thereof (Lab. Code, § 226.7; IWC Orders; Cal. Code Regs., Title 8, § 11050)**<br><br>**5) Violations of the Unfair Competition Law (Bus. & Prof. Code, §§ 17200-17208)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs MICHAEL WEIGELE, TESSA BISHOP, JOSE VALLADARES, JESSIE C. ALUMIT, ADINA-MARIE J BENFORD, RANDAL BORTMAN, BRYON BROOKS, OCIE R BROWN, AKIL CHAVIES, BRIAN CHON, RICHARD DAVIS, PETER FIERRO, NIESHA GIBBS, ARMOND GRAY, YONNIE LANGHAM, TERRY LOCATELLI, IBRAHIM MCFARLIN, BERNARDO SAN RAMON, ABBIE J. SHANKEL, EDDIE VILLEGAS AND KYLE WILLINGHAM (collectively referred to as "Plaintiffs") complain and allege as follows:

///

///

///

///

2

# I.

## **INTRODUCTION**

1.      This case arises out of the non-payment of overtime compensation and failure to provide rest and meal periods to certain California employees of defendant FEDEX GROUND PACKAGE SYSTEM, INC. (hereinafter "DEFENDANT" or "FEDEX"). Plaintiffs consist of persons classified as Dock Service Managers ("DSMs") and the related managerial positions, including Pick-up and Delivery Managers, who during their periods of employment, although performing non-exempt functions for Defendant, were misclassified as exempt employees and not paid premium overtime compensation in violation of California law. Generally, FEDEX used its classification scheme to require 10+ hour days without overtime pay.

2.      Plaintiffs, during their respective periods of employment with Defendant, were also denied meal periods and commensurate pay under Labor Code § 226.7. Plaintiffs, during their period of employment with Defendant, were also not authorized or permitted to take ten minute rest periods, nor were they presented with commensurate pay under Labor Code § 226.7.

3.      As used herein, the term "Plaintiffs" includes MICHAEL WEIGELE, TESSA BISHOP, JOSE VALLADARES, JESSIE C. ALUMIT, ADINA-MARIE J BENFORD, RANDAL BORTMAN, BRYON BROOKS, OCIE R BROWN, AKIL CHAVIES, BRIAN CHON, RICHARD DAVIS, PETER FIERRO, NIESHA GIBBS, ARMOND GRAY, YONNIE LANGHAM, TERRY LOCATELLI, IBRAHIM MCFARLIN, BERNARDO SAN RAMON, ABBIE J. SHANKEL, EDDIE VILLEGAS AND KYLE WILLINGHAM. At all relevant times alleged herein, Plaintiffs were California residents, who during their periods of employment with FEDEX, were entitled to overtime wages, meal periods and rest periods as required by applicable California laws, statutes, regulations and Wage Orders promulgated by the Industrial Welfare Commission (IWC).

4.      Plaintiffs seek compensation for work performed during their respective periods of employment, including restitution of all unpaid wages for a time period that commences from four years prior to the filing of this action through the trial date, based upon information and belief that Defendant is continuing, and will continue, its unlawful practices as described herein.

3

1    Plaintiffs will also seek any and all eligible penalties against Defendant for failure to pay all

2    wages due in a timely manner

3                                              **II.**

4                              **JURISDICTION AND VENUE**

5           5.       Subject matter jurisdiction is proper in the United States District Court for the

6    Southern District of California pursuant to 28 U.S.C. section 1332 and 28 U.S.C. section 1441(a)

7    in that the amount of damages in dispute exceeds minimum thresholds for both diversity

8    jurisdiction and under the Class Action Fairness Act ("CAFA"). This was formerly a certified

9    class action that has since been decertified. Based on *United Steel, Paper & Forestry, Rubber,*

10   *Manufacturing, Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO, CLC, v. Shell*

11   *Oil Co.*, et al., ___ F.3d ___, 2010 WL 1571190 (9th Cir. 2010), continued federal subject matter

12   jurisdiction exists.

13          6.       Venue is proper in that Defendant maintains offices and transacts business

14   throughout the State of California, including San Diego, and multiple other locations in the forum

15   state. Plaintiffs are informed and believe that Defendant's domicile state is the State of

16   Pennsylvania and that Defendant is incorporated in the State of Delaware. Plaintiffs are citizens

17   of the State of California.

18                                             **III.**

19                                    **THE PARTIES**

20   **A.    Plaintiffs**

21          7.       Plaintiff MICHAEL WEIGELE was an employee of Defendant. Plaintiff worked

22   in a position titled "Dock Service Manager" ("DSM") or similarly titled position from mid 2001-

23   late 2002 at the San Diego, California facility. Defendant uniformly and systematically classified

24   this position as not being eligible for any overtime compensation or duty-free and uninterrupted

25   meal periods as required by Industrial Welfare Commission Wage Order 4-2001, Sections 3, 11,

26   and 12, as well as applicable statutes provided by California Labor Code §§ 510, 512, and 1194.

27   Because Plaintiff's position was classified by Defendant as "exempt," and based on the volume of

28   work, absenteeism and understaffing the Plaintiff was regularly deprived of duty-free meal and

                                                  4

1    rest periods. Prior to this lawsuit, Plaintiff's position was never assessed by Defendant as to how

2    time was spent, the tasks required, or the amount of time spent performing a finite set of tasks.

3    Plaintiff alleges that Defendant's management hired DSM employees with the intention that they

4    perform non-exempt tasks such as handling packages, loading, unloading, distribution and

5    delivery for a majority of their daily and weekly work time, just as if the DSM was an hourly-paid

6    "Package Handler" for Defendant. DSM employees were required to stay on duty, clean up

7    load/unload areas, continue any unfinished Package Handler work, and deliver stray packages to

8    other FEDEX facilities toward the end of their shift. In essence, a DSM was a position designed

9    by Defendant to move, stack, distribute and handle packages, whether by loading or unloading

10   and distributing them at the location in the most efficient manner possible, all of which was pre-

11   determined by Defendant through its standardized procedures, policies and practices. During

12   Plaintiff's employment with Defendant, Plaintiff regularly worked shifts of 10 to 16 hours, at

13   least five day per week. Defendant kept no accurate records of Plaintiff's time worked or tasks

14   performed and as a result, Plaintiff reasonably estimates, as the law allows, that, on average 25

15   hours per week were expended that were eligible for overtime compensation at 1.5 times

16   Plaintiff's hourly rate of pay. Defendant never paid Plaintiff overtime compensation for any hours

17   worked over 8 per day or 40 per week as required by California law. Plaintiff was not permitted

18   and did not take 30 minute uninterrupted meal periods during Plaintiff's employment because

19   Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work,

20   absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on

21   showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay

22   overtime compensation and provide meal and rest periods in compliance with California law and

23   applicable regulations. Plaintiff reasonably estimates that there was no work day that he received

24   a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours

25   worked, free from all duty. However, at this time, Defendant has no records, time data, task data

26   or any other reliable means to meet Defendant's burden of proof under California law to show

27   that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered damages and lost,

28   unpaid and owing wages in an amount according to proof. Further, due to Defendant's

classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every week of employment where plaintiff worked overtime he was not provided with accurate wage statements showing hours actually worked and the hourly rate of pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant did not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his employment ended with Defendant. Defendant's managing agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor costs in a manner that violated California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time period of employment with Defendant.

8.      Plaintiff TESSA BISHOP was an employee of Defendant. Plaintiff worked in a position titled "Dock Service Manager" ("DSM") or similarly titled position from approximately February 2003 to November 2003 at the Commerce and Irvine California facilities. Defendant uniformly and systematically classified this position as not being eligible for any overtime compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was never assessed by Defendant as to how time was spent, the tasks required, or the amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM employees with the intention that they perform non-exempt tasks such as handling packages, loading, unloading, distribution and delivery for a majority of their daily and

1   weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant.

2   DSM employees were required to stay on duty, clean up load/unload areas, continue any

3   unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward

4   the end of their shift. In essence, a DSM was a position designed by Defendant to move, stack,

5   distribute and handle packages, whether by loading or unloading and distributing them at the

6   location in the most efficient manner possible, all of which was pre-determined by Defendant

7   through its standardized procedures, policies and practices. During Plaintiff's employment with

8   Defendant, Plaintiff regularly worked shifts of 10 to 12 hours, at least five day per week.

9   Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result,

10  Plaintiff reasonably estimates, as the law allows, that, on average, over 10 hours per week were

11  expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay.

12  Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40

13  per week as required by California law. Plaintiff's position was classified by Defendant as

14  "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff

15  alleges that Defendant has the burden of proof on showing that DSMs were plainly and

16  unmistakably exempt from the presumed requirement to pay overtime compensation and provide

17  meal and rest periods in compliance with California law and applicable regulations. Plaintiff

18  reasonably estimates that she did not in any work day receive a full meal break and two ten

19  minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing

20  that DSMs were plainly and unmistakably exempt from the presumed requirement to pay

21  overtime compensation and provide meal and rest periods in compliance with California law and

22  applicable regulations. Plaintiff reasonably estimates that there was no work day that she received

23  a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours

24  worked, free from all duty. However, at this time, Defendant has no records, time data, task data

25  or any other reliable means to meet Defendant's burden of proof under California law to show

26  that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered damages and lost,

27  unpaid and owing wages in an amount according to proof. Further, due to Defendant's

28  classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of

the actual hours worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every week of employment where plaintiff worked overtime she was not provided with accurate wage statements showing hours actually worked and the hourly rate of pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant did not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his employment ended with Defendant. Defendant's managing agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor costs in a manner that violated California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time period of employment with Defendant.

9.     Plaintiff JOSE VALLADARES was an employee of Defendant. Plaintiff worked in a position titled "Dock Service Manager" ("DSM") or similarly titled position from February 2003 through November 2003 at the Rialto California hub facility. Defendant uniformly and systematically classified this position as not being eligible for any overtime compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was never assessed by Defendant as to how time was spent, the tasks required, or the amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM employees with the intention that they perform non-exempt tasks such as handling packages, loading, unloading, distribution and delivery for a majority of their daily and weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

8

1   required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler
2   work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In
3   essence, a DSM was a position designed by Defendant to move, stack, distribute and handle
4   packages, whether by loading or unloading and distributing them at the location in the most
5   efficient manner possible, all of which was pre-determined by Defendant through its standardized
6   procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff
7   regularly worked shifts of 11 hours, at least five day per week. Defendant kept no accurate
8   records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably
9   estimates, as the law allows, that, on average, 15 hours per week were expended that were eligible
10  for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid
11  Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required
12  by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the
13  volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the
14  burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed
15  requirement to pay overtime compensation and provide meal and rest periods in compliance with
16  California law and applicable regulations. Plaintiff reasonably estimates that he did not in any
17  work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that
18  Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt
19  from the presumed requirement to pay overtime compensation and provide meal and rest periods
20  in compliance with California law and applicable regulations. Plaintiff reasonably estimates that
21  there was no work day that he received a full meal break for every 5 hours worked and a ten
22  minute rest periods for every 4 hours worked, free from all duty. However, at this time,
23  Defendant has no records, time data, task data or any other reliable means to meet Defendant's
24  burden of proof under California law to show that Plaintiff was an exempt employee. As a
25  consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount
26  according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,
27  Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His
28  paystub would simply show total salary paid and Defendant did not keep track of nor did his

9

**THIRD AMENDED COMPLAINT**

paystub show actual hours worked or an hourly rate. Therefore, for every week of employment where plaintiff worked overtime he was not provided with accurate wage statements showing hours actually worked and the hourly rate of pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant did not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his employment ended with Defendant. Defendant's managing agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor costs in a manner that violated California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time period of employment with Defendant.

    10.    Plaintiff JESSIE C. ALUMIT was an employee of Defendant. Plaintiff worked in a position titled "Dock Service Manager" ("DSM") or similarly titled position from August 2005 to November 2005 in the Sacramento California satellite/terminal facility. Defendant uniformly and systematically classified this position as not being eligible for any overtime compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was never assessed by Defendant as to how time was spent, the tasks required, or the amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM employees with the intention that they perform non-exempt tasks such as handling packages, loading, unloading, distribution and delivery for a majority of their daily and weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

**THIRD AMENDED COMPLAINT**

essence, a DSM was a position designed by Defendant to move, stack, distribute and handle packages, whether by loading or unloading and distributing them at the location in the most efficient manner possible, all of which was pre-determined by Defendant through its standardized procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff regularly worked shifts of over 10 hours, at least five day per week. Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably estimates, as the law allows, that, on average, over 13 hours per week were expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that he did not in any work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that there was no work day that he received a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from all duty. However, at this time, Defendant has no records, time data, task data or any other reliable means to meet Defendant's burden of proof under California law to show that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount according to proof. Further, due to Defendant's classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every week of employment where plaintiff worked overtime he was not provided with accurate wage statements showing

**THIRD AMENDED COMPLAINT**

1   hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

2   wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

3   distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

4   separated from Defendant's employment, Defendant did not pay any wages due for unpaid

5   overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

6   hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

7   employment ended with Defendant. Defendant's managing agents knew that Defendant's

8   classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

9   California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

10  wages due during Plaintiff's entire time period of employment with Defendant.

11          11.     Plaintiff ADINA-MARIE J. BENFORD was an employee of Defendant. Plaintiff

12  worked in a position titled "Dock Service Manager" ("DSM") or similarly titled position from

13  May 2003 to August 2003 at the Vallejo California satellite facility. Defendant uniformly and

14  systematically classified this position as not being eligible for any overtime compensation or

15  duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

16  Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

17  Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

18  "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

19  regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

20  never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

21  spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

22  employees with the intention that they perform non-exempt tasks such as handling packages,

23  loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

24  just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

25  required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

26  work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

27  essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

28  packages, whether by loading or unloading and distributing them at the location in the most

efficient manner possible, all of which was pre-determined by Defendant through its standardized procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff regularly worked shifts of over 10 hours, at least five day per week. Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably estimates, as the law allows, that, on average, 13 hours per week were expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that she did not in any work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that there was no work day that she received a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from all duty. However, at this time, Defendant has no records, time data, task data or any other reliable means to meet Defendant's burden of proof under California law to show that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount according to proof. Further, due to Defendant's classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every week of employment where plaintiff worked overtime she was not provided with accurate wage statements showing hours actually worked and the hourly rate of pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

13

1   distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

2   separated from Defendant's employment, Defendant did not pay any wages due for unpaid

3   overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

4   hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

5   employment ended with Defendant. Defendant's managing agents knew that Defendant's

6   classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

7   California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

8   wages due during Plaintiff's entire time period of employment with Defendant.

9          12.     Plaintiff RANDAL BORTMAN was an employee of Defendant. Plaintiff worked

10   in a position titled "Dock Service Manager" ("DSM") or similarly titled position from

11   approximately June 2002 to June 2005 and then again from April 2009 to June 2010 in one of

12   California [hub, terminal, satellite] facility. Defendant uniformly and systematically classified this

13   position as not being eligible for any overtime compensation or duty-free and uninterrupted meal

14   periods as required by Industrial Welfare Commission Wage Order 4-2001, Sections 3, 11, and

15   12, as well as applicable statutes provided by California Labor Code §§ 510, 512, and 1194.

16   Because Plaintiff's position was classified by Defendant as "exempt," and based on the volume of

17   work, absenteeism and understaffing Plaintiff was regularly deprived of duty-free meal and rest

18   periods. Prior to this lawsuit, Plaintiff's position was never assessed by Defendant as to how time

19   was spent, the tasks required, or the amount of time spent performing a finite set of tasks. Plaintiff

20   alleges that Defendant's management hired DSM employees with the intention that they perform

21   non-exempt tasks such as handling packages, loading, unloading, distribution and delivery for a

22   majority of their daily and weekly work time, just as if the DSM was an hourly-paid "Package

23   Handler" for Defendant. DSM employees were required to stay on duty, clean up load/unload

24   areas, continue any unfinished Package Handler work, and deliver stray packages to other

25   FEDEX facilities toward the end of their shift. In essence, a DSM was a position designed by

26   Defendant to move, stack, distribute and handle packages, whether by loading or unloading and

27   distributing them at the location in the most efficient manner possible, all of which was pre-

28   determined by Defendant through its standardized procedures, policies and practices. During

1   Plaintiff's employment with Defendant, Plaintiff regularly worked shifts of 10 to 13 hours, at

2   least five day per week. Defendant kept no accurate records of Plaintiff's time worked or tasks

3   performed and as a result, Plaintiff reasonably estimates, as the law allows, that, on average, over

4   22 hours per week were expended that were eligible for overtime compensation at 1.5 times

5   Plaintiff's hourly rate of pay. Defendant never paid Plaintiff overtime compensation for any hours

6   worked over 8 per day or 40 per week as required by California law. Plaintiff's position was

7   classified by Defendant as "exempt," and based on the volume of work, absenteeism and

8   understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that

9   DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime

10  compensation and provide meal and rest periods in compliance with California law and applicable

11  regulations. Plaintiff reasonably estimates that he did not in any work day receive a full meal

12  break and two ten minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of

13  proof on showing that DSMs were plainly and unmistakably exempt from the presumed

14  requirement to pay overtime compensation and provide meal and rest periods in compliance with

15  California law and applicable regulations. Plaintiff reasonably estimates that there was no work

16  day that he received a full meal break for every 5 hours worked and a ten minute rest periods for

17  every 4 hours worked, free from all duty. However, at this time, Defendant has no records, time

18  data, task data or any other reliable means to meet Defendant's burden of proof under California

19  law to show that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered

20  damages and lost, unpaid and owing wages in an amount according to proof. Further, due to

21  Defendant's classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one

22  kept track of the actual hours worked by Plaintiff. His paystub would simply show total salary

23  paid and Defendant did not keep track of nor did his paystub show actual hours worked or an

24  hourly rate. Therefore, for every week of employment where plaintiff worked overtime he was

25  not provided with accurate wage statements showing hours actually worked and the hourly rate of

26  pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff

27  did not meet California's legal requirements, but distributed them anyway, despite known

28  inaccuracies and incompleteness. Finally, once Plaintiff separated from Defendant's employment,

1    Defendant did not pay any wages due for unpaid overtime, missed meal periods or missed rest

2    breaks and did not pay all wages due within a 72-hour time period and in fact never paid the

3    Plaintiff any of these wages due for 30 days after his employment ended with Defendant.

4    Defendant's managing agents knew that Defendant's classification scheme was done in an effort

5    to avoid and limit labor costs in a manner that violated California law, but Defendant knowingly

6    took such actions anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time

7    period of employment with Defendant.

8          13.    Plaintiff BRYON BROOKS was an employee of Defendant. Plaintiff worked in a

9    position titled "Dock Service Manager" ("DSM") or similarly titled position from June 2006

10   through May 2009 at the Pomona and City of Industry California hub facilities. Defendant

11   uniformly and systematically classified this position as not being eligible for any overtime

12   compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare

13   Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided

14   by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by

15   Defendant as "exempt," and based on the volume of work, absenteeism and understaffing

16   Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's

17   position was never assessed by Defendant as to how time was spent, the tasks required, or the

18   amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's

19   management hired DSM employees with the intention that they perform non-exempt tasks such as

20   handling packages, loading, unloading, distribution and delivery for a majority of their daily and

21   weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant.

22   DSM employees were required to stay on duty, clean up load/unload areas, continue any

23   unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward

24   the end of their shift. In essence, a DSM was a position designed by Defendant to move, stack,

25   distribute and handle packages, whether by loading or unloading and distributing them at the

26   location in the most efficient manner possible, all of which was pre-determined by Defendant

27   through its standardized procedures, policies and practices. During Plaintiff's employment with

28   Defendant, Plaintiff regularly worked shifts of 10 to 16 hours, at least five day per week.

1   Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result,

2   Plaintiff reasonably estimates, as the law allows, that, on average, 20 hours per week were

3   expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay.

4   Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40

5   per week as required by California law. Plaintiff's position was classified by Defendant as

6   "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff

7   alleges that Defendant has the burden of proof on showing that DSMs were plainly and

8   unmistakably exempt from the presumed requirement to pay overtime compensation and provide

9   meal and rest periods in compliance with California law and applicable regulations. Plaintiff

10  reasonably estimates that he did not in any work day receive a full meal break and two ten minute

11  rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that

12  DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime

13  compensation and provide meal and rest periods in compliance with California law and applicable

14  regulations. Plaintiff reasonably estimates that there was no work day that he received a full meal

15  break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from

16  all duty. (Plaintiff was allowed breaks while in control room area, but alleges they were not duty-

17  free, but spent monitoring automated systems.) However, at this time, Defendant has no records,

18  time data, task data or any other reliable means to meet Defendant's burden of proof under

19  California law to show that Plaintiff was an exempt employee. As a consequence, Plaintiff has

20  suffered damages and lost, unpaid and owing wages in an amount according to proof. Further,

21  due to Defendant's classification of the DSMs as salary exempt, Plaintiff was paid a salary and no

22  one kept track of the actual hours worked by Plaintiff. His paystub would simply show total

23  salary paid and Defendant did not keep track of nor did his paystub show actual hours worked or

24  an hourly rate. Therefore, for every week of employment where plaintiff worked overtime he was

25  not provided with accurate wage statements showing hours actually worked and the hourly rate of

26  pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff

27  did not meet California's legal requirements, but distributed them anyway, despite known

28  inaccuracies and incompleteness. Finally, once Plaintiff separated from Defendant's employment,

1    Defendant did not pay any wages due for unpaid overtime, missed meal periods or missed rest

2    breaks and did not pay all wages due within a 72-hour time period and in fact never paid the

3    Plaintiff any of these wages due for 30 days after his employment ended with Defendant.

4    Defendant's managing agents knew that Defendant's classification scheme was done in an effort

5    to avoid and limit labor costs in a manner that violated California law, but Defendant knowingly

6    took such actions anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time

7    period of employment with Defendant.

8           14.    Plaintiff OCIE R. BROWN was an employee of Defendant. Plaintiff worked in a

9    position titled "Dock Service Manager" ("DSM") or similarly titled position from approximately

10   July 2009 to August 2010 at a FedEx California distribution facility. Defendant uniformly and

11   systematically classified this position as not being eligible for any overtime compensation or

12   duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

13   Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

14   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

15   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

16   regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

17   never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

18   spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

19   employees with the intention that they perform non-exempt tasks such as handling packages,

20   loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

21   just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

22   required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

23   work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

24   essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

25   packages, whether by loading or unloading and distributing them at the location in the most

26   efficient manner possible, all of which was pre-determined by Defendant through its standardized

27   procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

28   regularly worked shifts of 12 hours, at least five day per week. Defendant kept no accurate

**THIRD AMENDED COMPLAINT**

1   records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

2   estimates, as the law allows, that, on average, 12 hours per week were expended that were eligible

3   for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

4   Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

5   by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the

6   volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the

7   burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

8   requirement to pay overtime compensation and provide meal and rest periods in compliance with

9   California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

10  work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

11  Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

12  from the presumed requirement to pay overtime compensation and provide meal and rest periods

13  in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

14  there was no work day that he received a full meal break for every 5 hours worked and a ten

15  minute rest periods for every 4 hours worked, free from all duty. However, at this time,

16  Defendant has no records, time data, task data or any other reliable means to meet Defendant's

17  burden of proof under California law to show that Plaintiff was an exempt employee. As a

18  consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

19  according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

20  Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

21  paystub would simply show total salary paid and Defendant did not keep track of nor did his

22  paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

23  where plaintiff worked overtime he was not provided with accurate wage statements showing

24  hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

25  wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

26  distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

27  separated from Defendant's employment, Defendant did not pay any wages due for unpaid

28  overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

1   hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

2   employment ended with Defendant. Defendant's managing agents knew that Defendant's

3   classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

4   California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

5   wages due during Plaintiff's entire time period of employment with Defendant.

6           15.    Plaintiff AKIL CHAVIES was an employee of Defendant. Plaintiff worked in a

7   position titled "Dock Service Manager" ("DSM") or similarly titled position from July 2002 to

8   June 2004 at one of FedEx's California distribution facilities. Defendant uniformly and

9   systematically classified this position as not being eligible for any overtime compensation or

10   duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

11   Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

12   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

13   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

14   regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

15   never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

16   spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

17   employees with the intention that they perform non-exempt tasks such as handling packages,

18   loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

19   just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

20   required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

21   work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

22   essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

23   packages, whether by loading or unloading and distributing them at the location in the most

24   efficient manner possible, all of which was pre-determined by Defendant through its standardized

25   procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

26   regularly worked shifts of 10 to 14 hours, at least five day per week. Defendant kept no accurate

27   records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

28   estimates, as the law allows, that, on average, 14 hours per week were expended that were eligible

1    for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

2    Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

3    by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the

4    volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the

5    burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

6    requirement to pay overtime compensation and provide meal and rest periods in compliance with

7    California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

8    work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

9    Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

10   from the presumed requirement to pay overtime compensation and provide meal and rest periods

11   in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

12   there was no work day that he received a full meal break for every 5 hours worked and a ten

13   minute rest periods for every 4 hours worked, free from all duty. However, at this time,

14   Defendant has no records, time data, task data or any other reliable means to meet Defendant's

15   burden of proof under California law to show that Plaintiff was an exempt employee. As a

16   consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

17   according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

18   Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

19   paystub would simply show total salary paid and Defendant did not keep track of nor did his

20   paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

21   where plaintiff worked overtime he was not provided with accurate wage statements showing

22   hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

23   wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

24   distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

25   separated from Defendant's employment, Defendant did not pay any wages due for unpaid

26   overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

27   hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

28   employment ended with Defendant. Defendant's managing agents knew that Defendant's

1    classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

2    California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

3    wages due during Plaintiff's entire time period of employment with Defendant.

4        16.    Plaintiff BRIAN CHON was an employee of Defendant. Plaintiff worked in a

5    position titled "Dock Service Manager" ("DSM") or similarly titled position from November

6    2003 through August 2004 at the Anaheim California satellite] facility. Defendant uniformly and

7    systematically classified this position as not being eligible for any overtime compensation or

8    duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

9    Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

10   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

11   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

12   regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

13   never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

14   spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

15   employees with the intention that they perform non-exempt tasks such as handling packages,

16   loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

17   just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

18   required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

19   work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

20   essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

21   packages, whether by loading or unloading and distributing them at the location in the most

22   efficient manner possible, all of which was pre-determined by Defendant through its standardized

23   procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

24   regularly worked shifts of 10 to 14 hours, at least five day per week. Defendant kept no accurate

25   records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

26   estimates, as the law allows, that, on average, 30 hours per week were expended that were eligible

27   for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

28   Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

22

by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that he did not in any work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that there was no work day that he received a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from all duty. However, at this time, Defendant has no records, time data, task data or any other reliable means to meet Defendant's burden of proof under California law to show that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount according to proof. Further, due to Defendant's classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every week of employment where plaintiff worked overtime he was not provided with accurate wage statements showing hours actually worked and the hourly rate of pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant did not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his employment ended with Defendant. Defendant's managing agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

1  California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

2  wages due during Plaintiff's entire time period of employment with Defendant.

3       17.   Plaintiff RICHARD DAVIS was an employee of Defendant. Plaintiff worked in a

4  position titled "Dock Service Manager" ("DSM") or similarly titled position from October 2001

5  to February 2004 at one of FedEx's California distribution facilities. Defendant uniformly and

6  systematically classified this position as not being eligible for any overtime compensation or

7  duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

8  Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

9  Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

10  "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

11  regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

12  never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

13  spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

14  employees with the intention that they perform non-exempt tasks such as handling packages,

15  loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

16  just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

17  required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

18  work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

19  essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

20  packages, whether by loading or unloading and distributing them at the location in the most

21  efficient manner possible, all of which was pre-determined by Defendant through its standardized

22  procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

23  regularly worked shifts of 10 hours, at least five day per week. Defendant kept no accurate

24  records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

25  estimates, as the law allows, that, on average, 10 hours per week were expended that were eligible

26  for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

27  Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

28  by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the

24

THIRD AMENDED COMPLAINT

1   volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the

2   burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

3   requirement to pay overtime compensation and provide meal and rest periods in compliance with

4   California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

5   work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

6   Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

7   from the presumed requirement to pay overtime compensation and provide meal and rest periods

8   in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

9   there was no work day that he received a full meal break for every 5 hours worked and a ten

10  minute rest periods for every 4 hours worked, free from all duty. However, at this time,

11  Defendant has no records, time data, task data or any other reliable means to meet Defendant's

12  burden of proof under California law to show that Plaintiff was an exempt employee. As a

13  consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

14  according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

15  Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

16  paystub would simply show total salary paid and Defendant did not keep track of nor did his

17  paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

18  where plaintiff worked overtime he was not provided with accurate wage statements showing

19  hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

20  wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

21  distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

22  separated from Defendant's employment, Defendant did not pay any wages due for unpaid

23  overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

24  hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

25  employment ended with Defendant. Defendant's managing agents knew that Defendant's

26  classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

27  California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

28  wages due during Plaintiff's entire time period of employment with Defendant.

18.     Plaintiff PETER FIERRO was an employee of Defendant. Plaintiff worked in a position titled "Dock Service Manager" ("DSM") or similarly titled position from approximately mid 2002 to December 2006 at the Torrance California Fed Ex facility. Defendant uniformly and systematically classified this position as not being eligible for any overtime compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was never assessed by Defendant as to how time was spent, the tasks required, or the amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM employees with the intention that they perform non-exempt tasks such as handling packages, loading, unloading, distribution and delivery for a majority of their daily and weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In essence, a DSM was a position designed by Defendant to move, stack, distribute and handle packages, whether by loading or unloading and distributing them at the location in the most efficient manner possible, all of which was pre-determined by Defendant through its standardized procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff regularly worked shifts of 10 to 16 hours, at least five day per week. Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably estimates, as the law allows, that, on average, 20 hours per week were expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

26

1    requirement to pay overtime compensation and provide meal and rest periods in compliance with

2    California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

3    work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

4    Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

5    from the presumed requirement to pay overtime compensation and provide meal and rest periods

6    in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

7    there was no work day that he received a full meal break for every 5 hours worked and a ten

8    minute rest periods for every 4 hours worked, free from all duty. However, at this time,

9    Defendant has no records, time data, task data or any other reliable means to meet Defendant's

10   burden of proof under California law to show that Plaintiff was an exempt employee. As a

11   consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

12   according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

13   Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

14   paystub would simply show total salary paid and Defendant did not keep track of nor did his

15   paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

16   where plaintiff worked overtime he was not provided with accurate wage statements showing

17   hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

18   wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

19   distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

20   separated from Defendant's employment, Defendant did not pay any wages due for unpaid

21   overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

22   hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

23   employment ended with Defendant. Defendant's managing agents knew that Defendant's

24   classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

25   California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

26   wages due during Plaintiff's entire time period of employment with Defendant.

27           19.     Plaintiff NIESHA GIBBS was an employee of Defendant. Plaintiff worked in a

28   position titled "Dock Service Manager" ("DSM") or similarly titled position from March 2004 to

27

**THIRD AMENDED COMPLAINT**

October 2005 in one of FedEx's California package distribution facilities. Defendant uniformly and systematically classified this position as not being eligible for any overtime compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was never assessed by Defendant as to how time was spent, the tasks required, or the amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM employees with the intention that they perform non-exempt tasks such as handling packages, loading, unloading, distribution and delivery for a majority of their daily and weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In essence, a DSM was a position designed by Defendant to move, stack, distribute and handle packages, whether by loading or unloading and distributing them at the location in the most efficient manner possible, all of which was pre-determined by Defendant through its standardized procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff regularly worked shifts of 10 to 16 hours, at least five day per week. Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably estimates, as the law allows, that, on average, 25 hours per week were expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that she did not in any

**THIRD AMENDED COMPLAINT**

work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that there was no work day that she received a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from all duty. However, at this time, Defendant has no records, time data, task data or any other reliable means to meet Defendant's burden of proof under California law to show that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount according to proof. Further, due to Defendant's classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every week of employment where plaintiff worked overtime she was not provided with accurate wage statements showing hours actually worked and the hourly rate of pay as required by law. Defendant knew that the wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant did not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his employment ended with Defendant. Defendant's managing agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor costs in a manner that violated California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time period of employment with Defendant.

    20.    Plaintiff ARMOND GRAY was an employee of Defendant. Plaintiff worked in a position titled "Dock Service Manager" ("DSM") or similarly titled position from February 2006 to Novemebr 2006 at one of Defendant's California package distribution facilities. Defendant uniformly and systematically classified this position as not being eligible for any overtime

**THIRD AMENDED COMPLAINT**

1   compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare

2   Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided

3   by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by

4   Defendant as "exempt," and based on the volume of work, absenteeism and understaffing

5   Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's

6   position was never assessed by Defendant as to how time was spent, the tasks required, or the

7   amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's

8   management hired DSM employees with the intention that they perform non-exempt tasks such as

9   handling packages, loading, unloading, distribution and delivery for a majority of their daily and

10  weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant.

11  DSM employees were required to stay on duty, clean up load/unload areas, continue any

12  unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward

13  the end of their shift. In essence, a DSM was a position designed by Defendant to move, stack,

14  distribute and handle packages, whether by loading or unloading and distributing them at the

15  location in the most efficient manner possible, all of which was pre-determined by Defendant

16  through its standardized procedures, policies and practices. During Plaintiff's employment with

17  Defendant, Plaintiff regularly worked shifts of 10 to 15 hours, at least five day per week.

18  Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result,

19  Plaintiff reasonably estimates, as the law allows, that, on average, over 17 hours per week were

20  expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay.

21  Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40

22  per week as required by California law. Plaintiff's position was classified by Defendant as

23  "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff

24  alleges that Defendant has the burden of proof on showing that DSMs were plainly and

25  unmistakably exempt from the presumed requirement to pay overtime compensation and provide

26  meal and rest periods in compliance with California law and applicable regulations. Plaintiff

27  reasonably estimates that he did not in any work day receive a full meal break and two ten minute

28  rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that

**THIRD AMENDED COMPLAINT**

1    DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime

2    compensation and provide meal and rest periods in compliance with California law and applicable

3    regulations. Plaintiff reasonably estimates that there was no work day that he received a full meal

4    break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from

5    all duty. However, at this time, Defendant has no records, time data, task data or any other

6    reliable means to meet Defendant's burden of proof under California law to show that Plaintiff

7    was an exempt employee. As a consequence, Plaintiff has suffered damages and lost, unpaid and

8    owing wages in an amount according to proof. Further, due to Defendant's classification of the

9    DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of the actual hours

10   worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep

11   track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every

12   week of employment where plaintiff worked overtime he was not provided with accurate wage

13   statements showing hours actually worked and the hourly rate of pay as required by law.

14   Defendant knew that the wage statements Defendant provided to Plaintiff did not meet

15   California's legal requirements, but distributed them anyway, despite known inaccuracies and

16   incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant did

17   not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and did

18   not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of

19   these wages due for 30 days after his employment ended with Defendant. Defendant's managing

20   agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor

21   costs in a manner that violated California law, but Defendant knowingly took such actions

22   anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time period of

23   employment with Defendant.

24           21.     Plaintiff YONNIE LANGHAM was an employee of Defendant. Plaintiff worked

25   in a position titled "Dock Service Manager" ("DSM") or similarly titled position from

26   approximately October 2001 to August 2003 and then again from February 2004 to June 2006 at

27   the Stockton and Vallejos California package distribution facilities. Defendant uniformly and

28   systematically classified this position as not being eligible for any overtime compensation or

**THIRD AMENDED COMPLAINT**

1   duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

2   Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

3   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

4   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

5   regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

6   never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

7   spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

8   employees with the intention that they perform non-exempt tasks such as handling packages,

9   loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

10   just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

11   required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

12   work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

13   essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

14   packages, whether by loading or unloading and distributing them at the location in the most

15   efficient manner possible, all of which was pre-determined by Defendant through its standardized

16   procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

17   regularly worked shifts of 14-15 hours, at least five day per week. Defendant kept no accurate

18   records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

19   estimates, as the law allows, that, on average, 25 hours per week were expended that were eligible

20   for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

21   Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

22   by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the

23   volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the

24   burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

25   requirement to pay overtime compensation and provide meal and rest periods in compliance with

26   California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

27   work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

28   Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

1  from the presumed requirement to pay overtime compensation and provide meal and rest periods

2  in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

3  there was no work day that he received a full meal break for every 5 hours worked and a ten

4  minute rest periods for every 4 hours worked, free from all duty. However, at this time,

5  Defendant has no records, time data, task data or any other reliable means to meet Defendant's

6  burden of proof under California law to show that Plaintiff was an exempt employee. As a

7  consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

8  according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

9  Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

10  paystub would simply show total salary paid and Defendant did not keep track of nor did his

11  paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

12  where plaintiff worked overtime he was not provided with accurate wage statements showing

13  hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

14  wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

15  distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

16  separated from Defendant's employment, Defendant did not pay any wages due for unpaid

17  overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

18  hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

19  employment ended with Defendant. Defendant's managing agents knew that Defendant's

20  classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

21  California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

22  wages due during Plaintiff's entire time period of employment with Defendant.

23          22.      Plaintiff TERRY LOCATELLI was an employee of Defendant. Plaintiff worked in

24  a position titled "Dock Service Manager" ("DSM") or similarly titled position from June 2002 to

25  January 2003 at one of FedEx's California distribution facilities. Defendant uniformly and

26  systematically classified this position as not being eligible for any overtime compensation or

27  duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

28  Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

**THIRD AMENDED COMPLAINT**

1   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

2   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

3   regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

4   never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

5   spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

6   employees with the intention that they perform non-exempt tasks such as handling packages,

7   loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

8   just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

9   required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

10  work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

11  essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

12  packages, whether by loading or unloading and distributing them at the location in the most

13  efficient manner possible, all of which was pre-determined by Defendant through its standardized

14  procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

15  regularly worked shifts of 10 to 15 hours, at least five day per week. Defendant kept no accurate

16  records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

17  estimates, as the law allows, that, on average, 20 hours per week were expended that were eligible

18  for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

19  Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

20  by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the

21  volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the

22  burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

23  requirement to pay overtime compensation and provide meal and rest periods in compliance with

24  California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

25  work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

26  Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

27  from the presumed requirement to pay overtime compensation and provide meal and rest periods

28  in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

**THIRD AMENDED COMPLAINT**

1    there was no work day that he received a full meal break for every 5 hours worked and a ten

2    minute rest periods for every 4 hours worked, free from all duty. However, at this time,

3    Defendant has no records, time data, task data or any other reliable means to meet Defendant's

4    burden of proof under California law to show that Plaintiff was an exempt employee. As a

5    consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

6    according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

7    Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

8    paystub would simply show total salary paid and Defendant did not keep track of nor did his

9    paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

10   where plaintiff worked overtime he was not provided with accurate wage statements showing

11   hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

12   wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

13   distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

14   separated from Defendant's employment, Defendant did not pay any wages due for unpaid

15   overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

16   hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

17   employment ended with Defendant. Defendant's managing agents knew that Defendant's

18   classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

19   California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

20   wages due during Plaintiff's entire time period of employment with Defendant.

21         23.     Plaintiff IBRAHIM McFARLIN was an employee of Defendant. Plaintiff worked

22   in a position titled "Dock Service Manager" ("DSM") or similarly titled position from July 2005

23   to August 2006 at one of FedEx's California distribution facilities. Defendant uniformly and

24   systematically classified this position as not being eligible for any overtime compensation or

25   duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

26   Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

27   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

28   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

1    regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

2    never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

3    spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

4    employees with the intention that they perform non-exempt tasks such as handling packages,

5    loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

6    just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

7    required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

8    work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

9    essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

10   packages, whether by loading or unloading and distributing them at the location in the most

11   efficient manner possible, all of which was pre-determined by Defendant through its standardized

12   procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

13   regularly worked shifts of 10 to 16 hours, at least five day per week. Defendant kept no accurate

14   records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

15   estimates, as the law allows, that, on average, 15 hours per week were expended that were eligible

16   for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

17   Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

18   by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the

19   volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the

20   burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

21   requirement to pay overtime compensation and provide meal and rest periods in compliance with

22   California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

23   work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

24   Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

25   from the presumed requirement to pay overtime compensation and provide meal and rest periods

26   in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

27   there was no work day that he received a full meal break for every 5 hours worked and a ten

28   minute rest periods for every 4 hours worked, free from all duty. However, at this time,

36

1    Defendant has no records, time data, task data or any other reliable means to meet Defendant's

2    burden of proof under California law to show that Plaintiff was an exempt employee. As a

3    consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

4    according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

5    Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

6    paystub would simply show total salary paid and Defendant did not keep track of nor did his

7    paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

8    where plaintiff worked overtime he was not provided with accurate wage statements showing

9    hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

10   wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

11   distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

12   separated from Defendant's employment, Defendant did not pay any wages due for unpaid

13   overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

14   hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

15   employment ended with Defendant. Defendant's managing agents knew that Defendant's

16   classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

17   California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

18   wages due during Plaintiff's entire time period of employment with Defendant.

19          24.     Plaintiff BERNARDO SAN RAMON was an employee of Defendant. Plaintiff

20   worked in a position titled "Dock Service Manager" ("DSM") or similarly titled position from

21   May 2006 to February 2007 at the Miramar California satellite facility. Defendant uniformly and

22   systematically classified this position as not being eligible for any overtime compensation or

23   duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

24   Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

25   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

26   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

27   regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

28   never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

37

**THIRD AMENDED COMPLAINT**

spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM employees with the intention that they perform non-exempt tasks such as handling packages, loading, unloading, distribution and delivery for a majority of their daily and weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In essence, a DSM was a position designed by Defendant to move, stack, distribute and handle packages, whether by loading or unloading and distributing them at the location in the most efficient manner possible, all of which was pre-determined by Defendant through its standardized procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff regularly worked shifts of 12 hours, at least five day per week. Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably estimates, as the law allows, that, on average, 20 hours per week were expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that he did not in any work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime compensation and provide meal and rest periods in compliance with California law and applicable regulations. Plaintiff reasonably estimates that there was no work day that he received a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from all duty. However, at this time, Defendant has no records, time data, task data or any other reliable means to meet Defendant's burden of proof under California law to show that Plaintiff was an exempt employee. As a

**THIRD AMENDED COMPLAINT**

1   consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

2   according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

3   Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

4   paystub would simply show total salary paid and Defendant did not keep track of nor did his

5   paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

6   where plaintiff worked overtime he was not provided with accurate wage statements showing

7   hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

8   wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

9   distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

10  separated from Defendant's employment, Defendant did not pay any wages due for unpaid

11  overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

12  hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

13  employment ended with Defendant. Defendant's managing agents knew that Defendant's

14  classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

15  California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

16  wages due during Plaintiff's entire time period of employment with Defendant.

17      25.     Plaintiff ABBIE J. SHANKEL was an employee of Defendant. Plaintiff worked in

18  a position titled "Dock Service Manager" ("DSM") or similarly titled position from

19  approximately April 2004 to April 2006 at one of FedEx's California package distribution

20  facilities. Defendant uniformly and systematically classified this position as not being eligible for

21  any overtime compensation or duty-free and uninterrupted meal periods as required by Industrial

22  Welfare Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes

23  provided by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was

24  classified by Defendant as "exempt," and based on the volume of work, absenteeism and

25  understaffing Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this

26  lawsuit, Plaintiff's position was never assessed by Defendant as to how time was spent, the tasks

27  required, or the amount of time spent performing a finite set of tasks. Plaintiff alleges that

28  Defendant's management hired DSM employees with the intention that they perform non-exempt

1   tasks such as handling packages, loading, unloading, distribution and delivery for a majority of

2   their daily and weekly work time, just as if the DSM was an hourly-paid "Package Handler" for

3   Defendant. DSM employees were required to stay on duty, clean up load/unload areas, continue

4   any unfinished Package Handler work, and deliver stray packages to other FEDEX facilities

5   toward the end of their shift. In essence, a DSM was a position designed by Defendant to move,

6   stack, distribute and handle packages, whether by loading or unloading and distributing them at

7   the location in the most efficient manner possible, all of which was pre-determined by Defendant

8   through its standardized procedures, policies and practices. During Plaintiff's employment with

9   Defendant, Plaintiff regularly worked shifts of 10 to 16 hours, at least five day per week.

10  Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result,

11  Plaintiff reasonably estimates, as the law allows, that, on average, 30 hours per week were

12  expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay.

13  Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40

14  per week as required by California law. Plaintiff's position was classified by Defendant as

15  "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff

16  alleges that Defendant has the burden of proof on showing that DSMs were plainly and

17  unmistakably exempt from the presumed requirement to pay overtime compensation and provide

18  meal and rest periods in compliance with California law and applicable regulations. Plaintiff

19  reasonably estimates that she did not in any work day receive a full meal break and two ten

20  minute rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing

21  that DSMs were plainly and unmistakably exempt from the presumed requirement to pay

22  overtime compensation and provide meal and rest periods in compliance with California law and

23  applicable regulations. Plaintiff reasonably estimates that there was no work day that she received

24  a full meal break for every 5 hours worked and a ten minute rest periods for every 4 hours

25  worked, free from all duty. However, at this time, Defendant has no records, time data, task data

26  or any other reliable means to meet Defendant's burden of proof under California law to show

27  that Plaintiff was an exempt employee. As a consequence, Plaintiff has suffered damages and lost,

28  unpaid and owing wages in an amount according to proof. Further, due to Defendant's

40

1    classification of the DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of

2    the actual hours worked by Plaintiff. His paystub would simply show total salary paid and

3    Defendant did not keep track of nor did his paystub show actual hours worked or an hourly rate.

4    Therefore, for every week of employment where plaintiff worked overtime she was not provided

5    with accurate wage statements showing hours actually worked and the hourly rate of pay as

6    required by law. Defendant knew that the wage statements Defendant provided to Plaintiff did not

7    meet California's legal requirements, but distributed them anyway, despite known inaccuracies

8    and incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant

9    did not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and

10   did not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of

11   these wages due for 30 days after his employment ended with Defendant. Defendant's managing

12   agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor

13   costs in a manner that violated California law, but Defendant knowingly took such actions

14   anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time period of

15   employment with Defendant.

16        26.    Plaintiff EDDIE VILLEGAS was an employee of Defendant. Plaintiff worked in a

17   position titled "Dock Service Manager" ("DSM") or similarly titled position from May 2005 to

18   August 2006 a one of FedEx's California terminal facilities. Defendant uniformly and

19   systematically classified this position as not being eligible for any overtime compensation or

20   duty-free and uninterrupted meal periods as required by Industrial Welfare Commission Wage

21   Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided by California Labor

22   Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by Defendant as

23   "exempt," and based on the volume of work, absenteeism and understaffing Plaintiff was

24   regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's position was

25   never assessed by Defendant as to how time was spent, the tasks required, or the amount of time

26   spent performing a finite set of tasks. Plaintiff alleges that Defendant's management hired DSM

27   employees with the intention that they perform non-exempt tasks such as handling packages,

28   loading, unloading, distribution and delivery for a majority of their daily and weekly work time,

41

**THIRD AMENDED COMPLAINT**

1   just as if the DSM was an hourly-paid "Package Handler" for Defendant. DSM employees were

2   required to stay on duty, clean up load/unload areas, continue any unfinished Package Handler

3   work, and deliver stray packages to other FEDEX facilities toward the end of their shift. In

4   essence, a DSM was a position designed by Defendant to move, stack, distribute and handle

5   packages, whether by loading or unloading and distributing them at the location in the most

6   efficient manner possible, all of which was pre-determined by Defendant through its standardized

7   procedures, policies and practices. During Plaintiff's employment with Defendant, Plaintiff

8   regularly worked shifts of 10 to 16 hours, at least five day per week. Defendant kept no accurate

9   records of Plaintiff's time worked or tasks performed and as a result, Plaintiff reasonably

10  estimates, as the law allows, that, on average, 13 hours per week were expended that were eligible

11  for overtime compensation at 1.5 times Plaintiff's hourly rate of pay. Defendant never paid

12  Plaintiff overtime compensation for any hours worked over 8 per day or 40 per week as required

13  by California law. Plaintiff's position was classified by Defendant as "exempt," and based on the

14  volume of work, absenteeism and understaffing. In fact, Plaintiff alleges that Defendant has the

15  burden of proof on showing that DSMs were plainly and unmistakably exempt from the presumed

16  requirement to pay overtime compensation and provide meal and rest periods in compliance with

17  California law and applicable regulations. Plaintiff reasonably estimates that he did not in any

18  work day receive a full meal break and two ten minute rest periods. In fact, Plaintiff alleges that

19  Defendant has the burden of proof on showing that DSMs were plainly and unmistakably exempt

20  from the presumed requirement to pay overtime compensation and provide meal and rest periods

21  in compliance with California law and applicable regulations. Plaintiff reasonably estimates that

22  there was no work day that he received a full meal break for every 5 hours worked and a ten

23  minute rest periods for every 4 hours worked, free from all duty. However, at this time,

24  Defendant has no records, time data, task data or any other reliable means to meet Defendant's

25  burden of proof under California law to show that Plaintiff was an exempt employee. As a

26  consequence, Plaintiff has suffered damages and lost, unpaid and owing wages in an amount

27  according to proof. Further, due to Defendant's classification of the DSMs as salary exempt,

28  Plaintiff was paid a salary and no one kept track of the actual hours worked by Plaintiff. His

42

THIRD AMENDED COMPLAINT

1  paystub would simply show total salary paid and Defendant did not keep track of nor did his

2  paystub show actual hours worked or an hourly rate. Therefore, for every week of employment

3  where plaintiff worked overtime he was not provided with accurate wage statements showing

4  hours actually worked and the hourly rate of pay as required by law. Defendant knew that the

5  wage statements Defendant provided to Plaintiff did not meet California's legal requirements, but

6  distributed them anyway, despite known inaccuracies and incompleteness. Finally, once Plaintiff

7  separated from Defendant's employment, Defendant did not pay any wages due for unpaid

8  overtime, missed meal periods or missed rest breaks and did not pay all wages due within a 72-

9  hour time period and in fact never paid the Plaintiff any of these wages due for 30 days after his

10  employment ended with Defendant. Defendant's managing agents knew that Defendant's

11  classification scheme was done in an effort to avoid and limit labor costs in a manner that violated

12  California law, but Defendant knowingly took such actions anyway and failed to pay Plaintiff all

13  wages due during Plaintiff's entire time period of employment with Defendant.

14      27.     Plaintiff KYLE WILLINGHAM was an employee of Defendant. Plaintiff worked

15  in a position titled "Dock Service Manager" ("DSM") or similarly titled position from

16  approximately February 2005 to November 2007 at the Rialto California hub facility. Defendant

17  uniformly and systematically classified this position as not being eligible for any overtime

18  compensation or duty-free and uninterrupted meal periods as required by Industrial Welfare

19  Commission Wage Order 4-2001, Sections 3, 11, and 12, as well as applicable statutes provided

20  by California Labor Code §§ 510, 512, and 1194. Because Plaintiff's position was classified by

21  Defendant as "exempt," and based on the volume of work, absenteeism and understaffing

22  Plaintiff was regularly deprived of duty-free meal and rest periods. Prior to this lawsuit, Plaintiff's

23  position was never assessed by Defendant as to how time was spent, the tasks required, or the

24  amount of time spent performing a finite set of tasks. Plaintiff alleges that Defendant's

25  management hired DSM employees with the intention that they perform non-exempt tasks such as

26  handling packages, loading, unloading, distribution and delivery for a majority of their daily and

27  weekly work time, just as if the DSM was an hourly-paid "Package Handler" for Defendant.

28  DSM employees were required to stay on duty, clean up load/unload areas, continue any

43

**THIRD AMENDED COMPLAINT**

1   unfinished Package Handler work, and deliver stray packages to other FEDEX facilities toward

2   the end of their shift. In essence, a DSM was a position designed by Defendant to move, stack,

3   distribute and handle packages, whether by loading or unloading and distributing them at the

4   location in the most efficient manner possible, all of which was pre-determined by Defendant

5   through its standardized procedures, policies and practices. During Plaintiff's employment with

6   Defendant, Plaintiff regularly worked shifts of 9.5 to 16 hours, at least five day per week.

7   Defendant kept no accurate records of Plaintiff's time worked or tasks performed and as a result,

8   Plaintiff reasonably estimates, as the law allows, that, on average, over 10 hours per week were

9   expended that were eligible for overtime compensation at 1.5 times Plaintiff's hourly rate of pay.

10  Defendant never paid Plaintiff overtime compensation for any hours worked over 8 per day or 40

11  per week as required by California law. Plaintiff's position was classified by Defendant as

12  "exempt," and based on the volume of work, absenteeism and understaffing. In fact, Plaintiff

13  alleges that Defendant has the burden of proof on showing that DSMs were plainly and

14  unmistakably exempt from the presumed requirement to pay overtime compensation and provide

15  meal and rest periods in compliance with California law and applicable regulations. Plaintiff

16  reasonably estimates that he did not in any work day receive a full meal break and two ten minute

17  rest periods. In fact, Plaintiff alleges that Defendant has the burden of proof on showing that

18  DSMs were plainly and unmistakably exempt from the presumed requirement to pay overtime

19  compensation and provide meal and rest periods in compliance with California law and applicable

20  regulations. Plaintiff reasonably estimates that there was no work day that he received a full meal

21  break for every 5 hours worked and a ten minute rest periods for every 4 hours worked, free from

22  all duty. However, at this time, Defendant has no records, time data, task data or any other

23  reliable means to meet Defendant's burden of proof under California law to show that Plaintiff

24  was an exempt employee. As a consequence, Plaintiff has suffered damages and lost, unpaid and

25  owing wages in an amount according to proof. Further, due to Defendant's classification of the

26  DSMs as salary exempt, Plaintiff was paid a salary and no one kept track of the actual hours

27  worked by Plaintiff. His paystub would simply show total salary paid and Defendant did not keep

28  track of nor did his paystub show actual hours worked or an hourly rate. Therefore, for every

1   week of employment where plaintiff worked overtime he was not provided with accurate wage

2   statements showing hours actually worked and the hourly rate of pay as required by law.

3   Defendant knew that the wage statements Defendant provided to Plaintiff did not meet

4   California's legal requirements, but distributed them anyway, despite known inaccuracies and

5   incompleteness. Finally, once Plaintiff separated from Defendant's employment, Defendant did

6   not pay any wages due for unpaid overtime, missed meal periods or missed rest breaks and did

7   not pay all wages due within a 72-hour time period and in fact never paid the Plaintiff any of

8   these wages due for 30 days after his employment ended with Defendant. Defendant's managing

9   agents knew that Defendant's classification scheme was done in an effort to avoid and limit labor

10  costs in a manner that violated California law, but Defendant knowingly took such actions

11  anyway and failed to pay Plaintiff all wages due during Plaintiff's entire time period of

12  employment with Defendant.

13     28. Plaintiffs JESSIE C. ALUMIT, ADINA-MARIE J BENFORD, RANDAL

14  BORTMAN, BRYON BROOKS, OCIE R BROWN, AKIL CHAVIES, BRIAN CHON,

15  RICHARD DAVIS, PETER FIERRO, NIESHA GIBBS, ARMOND GRAY, YONNIE

16  LANGHAM, TERRY LOCATELLI, IBRAHIM MCFARLIN, BERNARDO SAN RAMON,

17  ABBIE J. SHANKEL, EDDIE VILLEGAS AND KYLE WILLINGHAM were all class members

18  in the State of California who lawfully received Notice of this action and both its initial

19  certification as a class action and subsequent Notice that the action was decertified. Each has

20  elected to pursue their claims in this action individually based upon the common facts that they

21  were employed as "Dock Service Managers," in California for Defendant at various periods since

22  May 2002. Each engaged in the same job function for Defendant, were misclassified as "exempt"

23  from overtime requirements, required to work daily and weekly overtime hours without overtime

24  pay, and were denied meal and rest periods during their respective terms of employment. The

25  added Plaintiffs were formerly class members who desire to litigate their claims in this action.

26  **B.**  **Defendant**

27     29. Plaintiffs are informed and believe, and based thereon allege, that FEDEX

28  GROUND PACKAGE SYSTEM, INC. is a Delaware corporation, and is and was Plaintiffs'

1  employer. During the liability period, Defendant employed Plaintiffs as exempt within California.

2  On information and belief, Defendant is conducting business in good standing in California.

3         30.     Plaintiffs are ignorant of the true names, capacities, relationships and extent of

4  participation in the conduct herein alleged, of the defendants sued herein as DOES 1 through 500,

5  inclusive, but on information and belief allege that said Defendants are legally responsible for the

6  payment of overtime compensation, rest and meal period compensation and/or Labor Code §§

7  203 penalties to Plaintiffs by virtue of their unlawful practices, and therefore sue these

8  Defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names

9  and capacities of the DOE Defendants when ascertained.

10         31.     Plaintiffs are informed and believe, and based thereon allege, that each Defendant

11  acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint

12  scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are

13  legally attributable to the other Defendants.

14  **IV.**

15  **<u>GENERAL ALLEGATIONS</u>**

16         32.     California Labor Code § 1194 provides that notwithstanding any agreement to

17  work for a lesser wage, an employee receiving less than the legal overtime compensation is

18  entitled to recover in a civil action the unpaid balance of their overtime compensation, including

19  interest thereon, reasonable attorneys fees, and costs of suit.

20         33.     Further, Business and Professions Code § 17203 provides that any person who

21  engages in unfair competition may be enjoined in any court of competent jurisdiction. Business

22  and Professions Code § 17204 provides that any person who has suffered actual injury and has

23  lost money or property as a result of the unfair competition may bring an action in a court of

24  competent jurisdiction.

25         34.     During all, or a portion, of the relevant time period, Plaintiffs were employed by

26  Defendant in the State of California.

27         35.     Plaintiffs were deemed non-exempt employees covered under one or more

28  Industrial Welfare Commission (IWC) Wage Orders, including Wage Order 5-2001 ("Wage

**THIRD AMENDED COMPLAINT**

Order"), and Labor Code § 510, and/or other applicable wage orders, regulations and statutes, and each Plaintiff was not subject to an exemption for executive, administrative and professional employees, which imposed an obligation on the part of Defendant to pay Plaintiffs lawful overtime compensation, and rest and meal period compensation for missed, late or interrupted break periods.

36.    During the relevant time period, Defendant was obligated to pay Plaintiffs overtime compensation for all hours worked over eight (8) hours of work in one (1) day or forty (40) hours in one week. Plaintiffs all were required to work daily and weekly overtime based solely on FEDEX's unilateral and uniform decision to classify DSMs as exempt, even though FEDEX did not identify tasks, duties or time periods necessary to maintain or prove exempt status for Plaintiffs.

37.    Plaintiffs primarily performed non-exempt work in excess of the maximum regular rate hours set by the IWC in the above Wage Orders, regulations or statutes, and therefore entitled Plaintiffs to overtime compensation at time and a half rate, and when applicable, double time rates as set forth by the above Wage Orders, regulations and/or statutes. All Plaintiffs spent a majority of their work time engaged in non-exempt tasks and duties -- primarily to movement of parcels – to and from loading docks at Defendant's California facilities.

38.    Plaintiffs who ended their employment during the relevant time period, but were not paid the above due overtime compensation timely upon the termination of their employment as required by Labor Code §§ 201-203, are entitled to penalties as provided by California Labor Code § 203. Defendant has been on notice of its activities and has willfully and knowingly failed to pay overtime wages and provide commensurate meal and rest periods to Plaintiffs such that it is liable for these penalties.

///

39.    During the relevant time period, Defendant required Plaintiffs to work overtime without lawful compensation, in violation of the various above applicable Wage Orders, regulations and statutes, and Defendant: (1) willfully failed and refused, and continues to fail and refuse to pay lawful overtime compensation to each Plaintiff; and (2) willfully failed and refused,

**THIRD AMENDED COMPLAINT**

1  and continues to fail and refuse to pay wages promptly when due upon termination of

2  employment to each Plaintiff.

3        40.    During the relevant time period, Defendant required Plaintiffs to work without

4  being given paid ten minute rest periods for every four hours or major fraction thereof worked

5  and without being given a 30-minute meal period for shifts of at least five hours and second 30-

6  minute meal periods for shifts of at least ten hours during which Plaintiffs were relieved of all

7  duties and free to leave the premises, nor did Defendant pay any Plaintiffs one hour's pay at the

8  employee's regular rate of pay as premium pay compensation for failure to provide rest and/or

9  meal periods. Defendant's conduct violated the applicable Wage Orders and Labor Code Section

10  226.7.

11        41.    Plaintiffs who served as Dock Service Managers and related positions are

12  primarily involved in manual duties related to Defendant's package shipment business and related

13  non-exempt functions. They are not employed to manage Defendant's enterprise in managerial

14  duties, and their actual time performing such managerial duties comprises only a small fraction of

15  their actual daily job duties. Hence, the work performed in the so-called Dock Service Managers

16  and related positions is not executive work related to the managing of the business of Defendant

17  or a recognized department or subdivision thereof but rather is non-exempt work. Nor do

18  Plaintiffs perform exempt administrative or professional work. Plaintiffs spent a majority of their

19  work time performing productive work of loading and unloading parcels and having them

20  processed and routed correctly at Defendant's California facilities.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

48

**THIRD AMENDED COMPLAINT**

# V.

## VIOLATIONS ALLEGED

## FIRST CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES

**(All Plaintiffs against each Defendant)**

42.     Plaintiffs incorporate paragraphs 1 through 41 of this complaint as if fully alleged herein.

43.     Plaintiffs, and each of them, during their respective periods of employment, were regularly and systematically required to work in excess of 8 hours per day and/or 10 hours per week. Under law, they are entitled to overtime compensation for overtime work performed for Defendant, in an amount according to proof. Pursuant to Labor Code § 1194, Plaintiffs seek the payment of all overtime compensation which they earned and accrued after four (4) years prior to filing of this complaint, according to proof. Defendant, who maintains the burden to show exempt status, failed to keep time and task records necessary to meet that burden. Plaintiffs were not subject to exemptions in the applicable Wage Orders and spent a majority of their work time performing non-exempt work and tasks similar and identical to Defendant's hourly employees.

44.     Plaintiffs were primarily involved in manual duties related to Defendant's package shipment business and related non-exempt functions. They are not employed to manage Defendant's enterprise in managerial duties, and their actual time performing such managerial duties comprises only a small fraction of their actual daily job duties. Hence, the work performed by the so-called Dock Service Managers and related positions is not executive work related to the management of the business of Defendant or a recognized department or subdivision thereof but rather is non-exempt work. Plaintiffs spent over 50% of their work time performing production, non-managerial work, including direct package handling, loading and unloading packages, sorting packages, scanning packages, cleaning, delivering packages and moving trucks and trailers. Plaintiffs were required to and regularly worked over 8 hours a day and/or 40 hours a week and were never paid any overtime compensation because they were treated by Defendant as salaried

49

**THIRD AMENDED COMPLAINT**

1    exempt employees and thus did not get paid any overtime compensation, regardless of the number

2    of hours worked.

3        45.    Additionally, Plaintiffs are entitled to attorneys' fees, and costs, pursuant to

4    California Labor Code § 1194 and prejudgment interest.

5                            **SECOND CAUSE OF ACTION**

6        **FAILURE TO PAY WAGES OF TERMINATED OR RESIGNED EMPLOYEES**

7                        **(All Plaintiffs against each Defendant)**

8        46.    Plaintiffs incorporate paragraphs 1 through 45 of this complaint as if fully alleged

9    herein.

10       47.    Plaintiffs who ended their employment with Defendant during the relevant time

11   period, were entitled to be promptly paid lawful overtime compensation and other premiums, as

12   required by Labor Code §§ 201-203. Pursuant to Labor Code § 203, such Plaintiffs seek the

13   payment of penalties pursuant to Labor Code § 203, according to proof, which includes 30 days

14   of regular wages at their last hourly rate. Defendant has been and continues to be on notice of its

15   unlawful acts and practices, but knowingly and willfully continues the practice and fails to pay all

16   wages due in the time manner proscribed by law.

17       48.    Plaintiffs all worked over 8 hours a day and/or 40 hours a week and never were

18   paid any overtime compensation as they were treated as salary exempt employees by Defendant

19   and thus did not get paid any overtime compensation regardless of the number of hours worked.

20   Likewise, Plaintiffs were not able to take meal and rest breaks due to the lack of hourly

21   employees to do the non management work themselves, absenteeism, volume of work and overall

22   work demands and constraints placed on Plaintiffs by Defendant. All Plaintiffs are former

23   employees of Defendant who have not worked for Defendant for at least 30 days and upon

24   separation from their employment with Defendant none of Plaintiffs were paid for any of the

25   overtime worked or a one hour penalty for any of the missed meal and rest breaks. As a result,

26   Plaintiffs are each entitled to 30 days of waiting time penalties pursuant to Labor Code § 203 as

27   they are all former employees who are owed these unpaid wages for overtime and missed meal

28   and rest breaks.

1      49.     Additionally, Plaintiffs are entitled to attorneys' fees, and costs, pursuant to Labor

2  Code § 203 and prejudgment interest.

3                               **THIRD CAUSE OF ACTION**

4    **FAILURE TO PROVIDE MEAL PERIODS OR COMPENSATION IN LIEU THEREOF**

5                    **(All Plaintiffs against each Defendant)**

6      50.     Plaintiffs incorporate paragraphs 1 through 49 of this complaint as if fully alleged

7  herein.

8      51.     Defendant at all times was required to provide 30-minute uninterrupted and timely

9  meal periods in accordance with applicable Wage Orders and Labor Code Section 226.7.

10  Plaintiffs were regularly deprived of virtually all compliant break periods during their

11  employment. Plaintiffs are entitled to an hour of pay for each day that Defendant failed to

12  properly provide one or more meal periods, in an amount according to proof. Pursuant to Labor

13  Code § 226.7, Plaintiffs seek the payment of all meal period compensation which they are owed

14  beginning four (4) years prior to filing of this complaint, in an amount according to proof.

15      52.     As set forth herein, Plaintiffs were rarely provided a 30 minute uninterrupted meal

16  periods during their employment with Defendant based on the lack of hourly employees to do the

17  non-management work themselves, absenteeism, volume of work and overall work demands and

18  constraints placed on Plaintiffs by Defendant.

19      53.     Additionally, Plaintiffs are entitled to attorneys' fees, and costs, and prejudgment

20  interest.

21                             **FOURTH CAUSE OF ACTION**

22    **FAILURE TO PROVIDE REST PERIODS OR COMPENSATION IN LIEU THEREOF**

23                    **(All Plaintiffs against each Defendant)**

24      54.     Plaintiffs incorporate paragraphs 1 through 53 of this complaint as if fully alleged

25  herein.

26      55.     Defendant at all times was required to provide paid 10-minute uninterrupted and

27  timely rest periods in accordance with applicable Wage Orders and Labor Code Section 226.7.

28  Plaintiffs were regularly deprived of virtually all compliant break periods during their

**THIRD AMENDED COMPLAINT**

1   employment with Defendant. Plaintiffs are entitled to an hour of pay for each day that Defendant

2   failed to properly provide one or more rest periods, in an amount according to proof. Pursuant to

3   Labor Code § 226.7, Plaintiffs seek the payment of all rest period compensation which they are

4   owed beginning four (4) years prior to filing of this complaint, according to proof.

5        56.     As set forth herein, Plaintiffs were rarely authorized or permitted to take 10 minute

6   uninterrupted rest periods during their employment with Defendant based on the lack of hourly

7   employees to do the non-management work themselves, absenteeism, volume of work and overall

8   work demands and constraints placed on Plaintiffs by Defendant.

9        57.     Additionally, Plaintiffs are entitled to attorneys' fees, and costs, and prejudgment

10  interest.

11                          **FIFTH CAUSE OF ACTION**

12              **VIOLATIONS OF THE UNFAIR COMPETITION LAW**

13                     **(All Plaintiffs against each Defendant)**

14       58.     Plaintiffs incorporate paragraphs 1 through 57 of this complaint as if fully alleged

15  herein.

16       59.     The failure to pay lawful overtime compensation, rest and meal period pay, and

17  timely pay all pay due upon termination of employment to each Plaintiff is an unlawful and unfair

18  business practice within the meaning of Business and Professions Code § 17200, et seq.,

19  including but not limited to a violation of the applicable State of California Industrial Welfare

20  Commission Wage Orders, regulations and statutes, or is otherwise a practice which is otherwise

21  unfair and unlawful, including that Defendant did not pay tax contributions on the accrued

22  overtime compensation in the form of FICA, Social Security, Medicare and Unemployment

23  Insurance.

24       60.     This cause of action is brought under Business and Professions Code §§ 17203 and

25  17204, commonly called the Unfair Competition Law. Under this cause of action and pursuant to

26  Business and Professions Code § 17208, Plaintiffs seek restitution of overtime wages and rest and

27  meal period pay owed and where applicable, the penalty wages (30-days pay) which are provided

28  under Labor Code § 203, where such overtime wages and penalties were due each Plaintiff the

relevant time period, commencing four (4) years prior to filing of this complaint, in amounts

according to proof.

61.     This cause of action is brought as a cumulative remedy as provided in Business

and Professions Code § 17205, and is intended as an alternative remedy for restitution for

Plaintiffs, the time period, or any portion thereof, commencing within four (4) years prior to the

filing of this complaint, and as the primary remedy for Plaintiffs for the time period of the fourth

year prior to the filing of this complaint, as such one year time period exceeds the applicable

statute of limitations on statutory wage claims.

62.     As a result of Defendant's unlawful and unfair business practice of failing to pay

overtime and prompt payment of wages in violation of Labor Code §§ 201 and 202, each Plaintiff

has suffered damages and is entitled to restitution in an amount according to proof.

63.     Further, Plaintiffs request the violations of Defendant alleged herein be enjoined,

and other equitable relief as this court deems proper including an order for the reclassification to

non-exempt status, and requiring and furnishing rest and meal periods and requiring payment by

Defendants of tax contributions on the accrued overtime compensation in the form of FICA,

Social Security, Medicare, Unemployment Insurance or other appropriate payments.

64.     This is a cumulative cause of action and because Plaintiffs all worked over 8 hours

a day and/or 40 hours a week and never were paid any overtime compensation as they were

treated as salary exempt employees by Defendant they did not get paid any overtime

compensation regardless of the number of hours worked. However, Plaintiffs spent a over 50% of

their work time performing productive non managerial work including direct package handling,

loading and unloading packages, sorting packages, scanning packages, cleaning, delivering

packages, moving trucks/trailers and thus they were not true management employees exempt

from overtime payments. Plaintiffs were rarely provided a 30 minute uninterrupted meal periods

during their employment with Defendant based on the lack of hourly employees to do the non

management work themselves, absenteeism, volume of work and overall work demands and

constraints placed on Plaintiffs by Defendant. Plaintiffs were also rarely authorized or permitted

to take two 10 minute uninterrupted rest periods during their employment with Defendant based

1   on the lack of hourly employees to do the non management work themselves, absenteeism,

2   volume of work and overall work demands and constraints placed on Plaintiffs by Defendant.

3   Because all Plaintiffs are former employees of Defendant who have not worked for Defendant for

4   at least 30 days and upon separation from their employment with Defendant none of Plaintiffs

5   were paid for any of the overtime worked or a one hour penalty for any of the missed meal and

6   rest breaks entitled them to 30 days of waiting time penalties pursuant to Labor Code § 203 as

7   they are all former employees who are owed these unpaid wages for overtime and missed meal

8   and rest breaks. Based on these specific facts, Plaintiffs are entitled to relief as a result of

9   Defendant's unlawful and unfair business practice of failing to pay overtime and prompt payment

10   of wages in violation of various Labor Code sections.

11                             **VI.**

12                     **PRAYER FOR RELIEF**

13        **WHEREFORE, Plaintiffs pray for relief as follows:**

14         1.      That the court determine that the failure of Defendant to pay overtime

15   compensation to Plaintiffs be adjudged and decreed to violate the applicable IWC Wage Orders,

16   regulations and statutes;

17         2.      That Defendant be ordered to pay and judgment be entered for overtime wages for

18   Plaintiffs on the First Cause of Action, in amounts according to proof;

19         3.      That Defendant be ordered to pay and judgment be entered for Labor Code § 203

20   penalties to Plaintiffs on the Second Cause of Action, in amounts according to proof;

21         4.      That Defendant be ordered to pay and judgment be entered for meal period wages

22   on the Third Cause of Action, in amounts according to proof;

23         5.      That Defendant be ordered to pay and judgment be entered for rest period wages

24   on the Fourth Cause of Action, in amounts according to proof;

25         6.      That Defendant be found to have engaged in unfair competition in violation of

26   Business and Professions Code § 17200;

27         7.      That Defendant be ordered and enjoined to pay restitution to Plaintiffs due to

28   Defendant's unlawful and unfair competition, including wrongfully withheld pay in amounts

1   according to proof, and interest thereon pursuant to Business and Professions Code §§ 17203 and

2   17204, on the Fifth Cause of Action;

3           8.      That Defendant be enjoined from further acts of unfair competition and

4   specifically from failing to pay overtime compensation and failing to provide rest and meal

5   periods to Plaintiffs on the Fifth Cause of Action;

6           9.      That Plaintiffs be awarded Attorneys' fees and costs pursuant to statute, including

7   but not limited to Labor Code § 1194 and Code of Civil Procedure § 1021.5;

8          10.     Otherwise determine the appropriate remedy to compensate Plaintiffs as required

9   to promote fairness and justice, including but not limited to establishing procedures for

10   compensation, compensation amounts and fluid recovery if appropriate;

11          11.     Prejudgment Interest;  and

12          12.     Any other relief as this court deems proper.

13   Dated: November 29, 2010           COHELAN KHOURY & SINGER

14                                           LAW OFFICES OF KEVIN T. BARNES
                                        LAW OFFICE OF JOSEPH ANTONELLI

15

16                             By  s/ J. Jason Hill
                                    J. Jason Hill

17                                       Attorneys for Plaintiffs

18   <u>**DEMAND FOR JURY TRIAL**</u>

19         Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

20   Dated: November 29, 2010           COHELAN KHOURY & SINGER
                                        LAW OFFICES OF KEVIN T. BARNES

21                                           LAW OFFICE OF JOSEPH ANTONELLI

22                             By  s/ J. Jason Hill

23                                         J. Jason Hill
                                    Attorneys for Plaintiffs

24

25

26

27

28

55

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    I am over the age of 18 years and not a party to this action. My business address is 5670 Wilshire Boulevard, Suite 1460, Los Angeles, California 90036-5627, which is located in Los Angeles County, where the service herein occurred.

   On the date of execution hereof, I served the attached document(s) described as:

**THIRD AMENDED COMPLAINT FOR DAMAGES AND RESTITUTION**

   on the interested parties in this action, addressed as follows:

| *Attorneys for Defendant:* | *Attorneys for Plaintiffs:* |
|---|---|
| Barbara J. Miller, Esq.<br>Jennifer L. Bradford, Esq.<br>MORGAN, LEWIS & BOCKIUS LLP<br>5 Park Plaza, Suite 1750<br>Irvine, CA 92614<br>Tel.: (949) 399-7156 / Fax: (949) 399-7001<br>Email:Barbara.Miller@morganlewis.com | Isam C. Khoury, Esq.<br>Michael D. Singer, Esq.<br>COHELAN KHOURY & SINGER<br>605 C Street, Suite 200<br>San Diego, CA 92101-5305<br>Tel.: (619) 595-3001 / Fax: (619) 595-3000<br>Singer@ck-lawfirm.com |
| John Battenfeld, Esq.<br>MORGAN, LEWIS & BOCKIUS LLP<br>300 S. Grand Ave., 22nd Floor<br>Los Angeles, CA 90071-3132<br>Tel: (213) 612-2500 / Fax: (213) 612-2501<br>Email: JBattenfeld@morganlewis.com | Joseph Antonelli, Esq.<br>Janelle Carney, Esq.<br>LAW OFFICE OF<br>JOSEPH ANTONELLI<br>1000 Lakes Drive, Suite 450<br>West Covina, CA 91790-2918<br>Tel.: (626) 917-6228 / Fax: (626) 917-7686<br>Email: JAntonelli@antonellilaw.com |

   using the following service method(s):

 **X** **VIA ELECTRONIC SERVICE:** The above documents were electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the above interested parties.

   I DECLARE under penalty of perjury that the foregoing is true and correct.

Executed on **November 29, 2010**, at Los Angeles, California.

        /s/ Gregg Lander
        **Gregg Lander**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/63562559.4

2